## REYNOLDS v. TANKERSLEY et al.

No. 21772.   Feb. 20, 1934.

Withdrawn, Corrected, and Refiled March 2, 1934.

J. M. Huser, Biggers, Criswell & Aldridge, Lynn Adams, and Pryor & Wallace, for plaintiff in error.

H. W. Carver and A. M. Wilson, for defendants in error.

OSBORN, J. This action was filed in the district court of Seminole county by R. R. Reynolds, in which he sought to obtain an injunction against A. L. Tankersley, R. B. Jackson, and Joe McDonald, members of the board of education for union graded school district No. 3, of Seminole and Pottawatomie counties. A judgment was rendered denying the application for injunction, and plaintiff has appealed. The parties will be referred to as they appeared in the trial court.

Plaintiff is a resident and taxpayer of union graded school district No. 3, and brings this action in behalf of himself and the patrons of said district. Said district is made up of what were formerly five school districts known as Pluvver Hill, Jarvis, Little, Lone Star, and Victor Hill. Plaintiff resides in what was formerly Pluvver Hill district. During the month of June, 1930, elections were called for the two wing districts known as Little district and Jarvis district in which it was sought to submit to the voters who resided within the territorial boundaries of these two wing districts, two propositions: First, whether or not each of the respective wing schools should be abolished; and, second, whether or not the union graded school district should furnish transportation to the pupils residing within the two wing districts to the central building. This action was brought to enjoin the holding of said elections, but during the pendency of this action the elections were held and the propositions carried. Thereafter plaintiff filed an amended petition in which he attacked the elections as being illegal, and alleged that the school board of the union graded school district was proceeding to put into effect the mandate of the voters as expressed in the elections. The prayer of the petition is for an injunction to issue against the board of education to enjoin and restrain them from transferring and transporting pupils from Jarvis school and Little school to the central building, and to further restrain them from expending money belonging to the union graded school district for the purpose of transporting the pupils from the wing schools to the central building.

Union graded school districts are organized under the provisions of section 6940, O. S. 1931, which provides for the holding of an election to determine whether or not several districts shall unite to form a union graded school district, and provides for the election of a board of education to serve the new district, and further provides for the establishment of a central school "in which instruction shall be given to all pupils above the 6th grade to and including the regular high school work, and such work shall not be duplicated in other schools of the union graded school district."

When the several schools, by a majority vote, decide to form a union graded school district under the provisions of the law, the several districts lose their individual entity and unite to become one district, which is a body politic and corporate. Section 6784, O. S. 1931. In all matters in which the new district as a unit is interested the majority vote of the district controls except as to certain matters especially designated in the statute. The new board constitutes the board of education for the entire district.

The election held by the Little district and the Jarvis district attempted to settle two specific propositions: First, the abolishing of their wing schools; and, second, the furnishing of transportation of the pupils to the central building. It will be necessary to consider each proposition separately.

As to whether or not the voters of the two original districts may abolish the wing schools in which they alone are interested, the statute is not clear. The parties call attention to that portion of section 6940, supra, which provides that "no schoolhouse shall ever be abolished, sold or removed except by a majority vote of the school electors living in the area included in the original school district."

Plaintiff contends that this section refers only to the house, while defendants contend that it evidences a legislative intent to permit the patrons of one of the original districts to abandon and abolish the school. The question is not free from difficulty, and in order to determine the legislative intent in this regard, it is necessary to consider the general course of legislation with reference to establishment of union graded school districts.

Since 1915 the Legislature has been dealing with the problem of formulating consolidated districts and union graded school districts in an attempt to take advantage of better transportation facilities for the purpose of providing better educational facilities in rural schools. It is noted that through the course of the various legislative acts in this connection it is provided generally that the will of the majority of the people concerned controls. The acts provide for elections to be called for the purpose of settling the major issues with reference to the establishment of school districts of this character. These acts were promulgated for the purpose of meeting changed conditions. The general purpose of the acts is to promote fewer schools and better schools. The Legislature considered that conditions would continue to change, and that from time to time it might be wise to abolish more schools in order to promote concentration and efficiency. It is recognized that the people living in the districts are the better judges of the wisdom and expediency of such action, and the authority of the school board to abolish such schools is restricted until the people of the former district shall give their consent at an election. In this case, the school board is seeking to ratify and confirm the action of the people by abolishing the wing schools and providing other facilities. We find nothing in the statutes which prohibits this course of action. It is noted the pupils of the districts concerned have been transferred to the central building. There is no prohibition against the school board in this respect. As further evidence of a legislative intent that such procedure is lawful and proper, see chapter 205, S. L. 1933.

As to the second proposition voted in the two elections, which relates to the furnishing of transportation for the pupils from the two wing schools to the central building, attention is directed to the following portion of section 6940, supra:

"* * * Public transportation may be provided in any union graded district to convey pupils to and from the central building provided a meeting of the legal voters of the district is called to vote on this measure and sixty per cent. (60%) of the voters present at such meeting vote in favor of such measure. * * *"

We find in the record the following stipulation:

"It is further agreed that the entire union graded district has not voted to transport said pupils from said districts of Jarvis and Little to the central building."

This provision in the statute is plain and unambiguous. It is clear that the voters of the Little district and Jarvis district are without authority to vote transportation for their own pupils to the central school when the cost of the transportation must be borne by the entire district, and to this extent the election was illegal and void and the action of the school board unlawful.

The judgment of the trial court is reversed and the cause remanded with directions to the trial court to enter a judgment and order in conformity with the view herein expressed.

RILEY, C. J., and SWINDALL, ANDREWS, and McNEILL, JJ., concur.