**GOODWIN et al. v. UNION GRADED SCHOOL DISTRICT NO. 4, CADDO COUNTY, et al.**

No. 27530.  Dec. 7, 1937.

Haskell B. Pugh, for plaintiffs in error.

A. J. Morris, for defendants in error.

BAYLESS, V. C. J.  This is an appeal from the district court of Caddo county, Okla., by O. B. Goodwin et al., who complain of the refusal of said court to grant them injunctive relief against Union Graded School District No. 4, Caddo county, Okla., and its board members.

The union graded district is comprised of the following common school districts: Anchor District No. 94, Eureka District No. 95, in Washita county, Okla., and Caddo Star District No. 94, Alfalfa District No. 93, and Caddo Valley District No. 95, in Caddo county, Okla. An election was held in each of the common school districts to determine whether the local or wing school should be abolished and sold. A majority of those present and voting in each of these districts voted in the affirmative, except Caddo Star District No. 94, and Eureka District No. 95, supra. It is agreed that in none of these districts in which the proposition carried was a majority of all of the legal voters of the district cast in an affirmative.

Two days later an election was held in the Union Graded District to choose a site for the central school. A majority of those present and voting was cast for a particular site. It is admitted that a majority voting was not equal to a majority of all of the legal voters of Union Graded District.

The testimony showed clearly that there was no intention to abolish, or sell, the wing schools in the two districts where the proposition to sell was defeated. Therefore, we have no issue of the threatened violation of the expressed mandate of the voters of those districts. No injunction was needed thereon.

The issue of law raised by the appellants attacks both elections alike, and since there is no dispute in regard to the facts, they will be considered together.

Briefly, the appellants contend that, since the affirmative majority on the proposition was calculated only upon the basis of the number of votes cast at the election and not upon the basis of the number of legal electors residing in the specific districts, that there exists no legal sanction for the sale of the three wing schools, nor for the erection of the central school.

Section 6940, O. S. 1931, reading in part as follows:

"No schoolhouse shall ever be abolished, sold or removed except by a majority vote of the school electors living in the area included in the original school district."

And section 6948, O. S. 1931, reads:

"No part of the statute of Oklahoma shall be construed so as to prevent the location of the site for a schoolhouse in the union graded school districts by a majority of the electors of said union graded school district."

These two quoted provisions of our statutes are the ones cited and relied upon by the appellants.

Appellants argue that other sections of our statute have been construed contrary to their contention herein (sections 7505, 7514, 7499, 7412, 7508, and 4822, O. S. 1931), but they insist that the wording of those statutes admit of, if they do not impel, a contrary construction to the one contended for by the appellants. Of course these sanctions relate to other subjects, but are used by way of argument by the appellants. Appellants further say that section 6940, supra, had been construed contrary to their contention in Reynolds v. Tankersley et al., 167 Okla. 425, 29 P. (2d) 976, but they insist that the precise issue was not involved, and the decision does not disclose complete consideration of the point.

It will be noticed that the sections quoted do not contain the word "all" in defining the electorate, a majority of which must act affirmatively. The argument which the appellants make calls for a construction of the language used which would necessitate the interpolation of the word "all". It is significant that the authorities cited by them relate to issues and situations not analogous to the one under consideration.

The contention of the appellants is contrary to the general rule on the precise point. 9 R. C. L. 1116, paragraph 117, states the rule correctly, in our opinion, and as follows:

"And so a constitutional provision, requiring the assent of two-thirds of the qualified voters of the county, at an election lawfully held for the purpose, to a proposed issue of municipal bonds, means the vote of two-thirds of the qualified voters present and voting at such election in its favor as determined by the official return of the result. Voters not attending the election or not voting on the matter submitted are presumed to assent to the expressed will of those attending and voting, unless the law providing for the election declares otherwise."

This rule has been applied in Oklahoma in Woods v. U. G. School District No. 36, 133 Okla. 248, 271 P. 424. See, also, Mason v. School District No. 72, 66 Okla. 239, 168 P. 798, where a section of our Constitution reading "two-thirds of the qualified voters" meant two-thirds of those present and voting. The same rule is used by the Supreme Court of the United States. Carroll County v. Smith, 111 U. S. 556, 28 L. Ed. 517. See, also, 70 C. J. 205, and McCreary on Elections (3d Ed.) 173, and 18 Amer. Dig., Elections, Key No. 257.

Judgment affirmed.

OSBORN, C. J., and WELCH, GIBSON, HURST, and DAVISON, JJ., concur. RILEY, PHELPS, and CORN, JJ., absent.