## SCHOOL BOARD OF CONSOLIDATED DISTRICT NO. 36, STEPHENS COUNTY. v. EDWARDS et al.

No. 28367.   Feb. 28, 1939.

Sullivan & Marmaduke, for plaintiff in error.

Bond & Bond and Brown & Cund, for defendants in error.

DANNER, J. This is an action by certain taxpayers residing in territory formerly organized as Burwood school district No. 56 in Stephens county, which is now a disorganized district and is a part of consolidated school district No. 36 in that county. They sought an injunction against the school board of the consolidated district enjoining said board from moving a three-room school building, known as a "teacherage," from said Burwood district territory to a high school located elsewhere within the consolidated district. The trial court held for the plaintiffs, and the defendant school board appeals.

Prior to 1926 there were three common school districts lying adjacent each other, known as Burwood school district No. 56, Thompson school district No. 57, and Royal school district No. 36. The Burwood district, wherein plaintiffs reside, had no indebtedness and it owned the three-room building which is the subject of this action.

In 1926 these three common school districts were united by vote of the people into one district, known as union graded school district No. 36. Said union graded district thereafter voted a bond issue of $8,000, and a high school building was erected. Until May 17, 1937, during which time the bonded indebtedness had been reduced to $4,000, the territory remained thus organized.

On that date, however, the union graded district was dissolved by an order of the county superintendent, pursuant to the result of an election held on May 4, 1937, for the purpose of voting on the question. No allocation or proration of the above indebtedness among the three common school districts, as formerly existed, was made by the county excise board or by anyone else, at any time.

The entire territory thus lay without any formal reorganization for a while. At an election on June 22, 1937, the vote carried to disorganize common school districts Nos. 56, 57, and 36 and to consolidate the same into one district, the same to be known as consolidated school district No. 36. On July 15, 1937, the county superintendent's order was entered declaring the result of said election and announcing the organization of said consolidated district.

As stated above, when the union graded district was dissolved there was no allocation or proration of the $4,000 remaining bonded indebtedness among the disorganized common school districts. The evidence in the case shows what that amount should be, as to each of said districts. The county excise board, however, did make a levy for the fiscal year 1937-1938, to cover this indebtedness, against the entire territory comprising consolidated school district No. 36, which is the same territory as that comprising the three disorganized districts.

At some time prior to December of 1937, the defendant school board of consolidated district No. 36 made preparations to move the three-room building mentioned above, from its location in the Burwood territory, to its high school located outside of the old Burwood district, for use as a class room. The plaintiffs filed this injunction action to prevent said removal. Their theory, which was adopted by the trial court, was that, pursuant to the statutes hereinafter quoted, the Burwood school district territory was charged with its pro rata share of the $4,000 remaining bonded indebtedness of the former union graded school district, and that they as taxpayers and in behalf of other taxpayers similarly situated were entitled to have the Burwood school district property sold and the proceeds applied on that indebtedness. Thus the Burwood territory's share would eventually be reduced by the sale price of the house; otherwise the plaintiffs' taxes would be increased, or would aggregate more than if the house were moved away and not sold and applied against said indebtedness. On the other hand, the defendants contend that no part of the union graded school district's bonded debt devolved upon the Burwood district at all, upon dissolution of the union graded district.

Proper solution of the question necessitates consideration of the changes in identity of the district or districts, as related ·above, in the order of occurrence thereof, and the legal result flowing from each of said changes.

When Burwood, Thompson, and Royal common school districts in 1926 were organized into union graded school district No. 36, they were thereby disorganized in so far as an existing legal status as school districts was concerned. Section 6940, O. S. 1931, 70 Okla. St. Ann. sec. 281. But in another sense, or dependent upon future contingencies, their organization or status was only suspended. Such a contingency would be the dissolution of the union graded district itself. As stated in Board of Education of Town of Gould v. Smith, 184 Okla. 104, 85 P.2d 286, "their legal status as common school districts ceases or is suspended so long as the consolidation continues".

When the union graded district was dissolved on May 17, 1937, leaving an unpaid balance on its bonded indebtedness, the result was not a mere void or hiatus in school district identity throughout the territory. Continuing the above quotation from the Gould Case, wherein the court was speaking of either a consolidated or union graded dissolution and the effect thereof upon the common school districts from which it was formed:

"But there is specific statutory authority for the assumption of their common school status upon dissolution of the consolidation. Section 6939, O. S. 1931, 70 Okla. St. Ann. section 583 (relating to distribution of indebtedness), and section 6938, O. S. 1931, 70 Okla. St. Ann. sec. 582 (authorizing the appointment of suitable officers for common school districts after dissolution of consolidation)".

Section 6938, O. S. 1931, 70 Okla. St. Ann. sec. 582, "revives" said common school districts. That operation of the law was recognized and adopted by the governing officers, for although the record indicates that the prime purpose in dissolving the union graded district was the desire to become a consolidated district, it also indicates that the county superintendent issued a decree reviving said common school districts and that separate school boards were in fact appointed for each of them. The three common school districts again existed, at least in so far as the purposes of the present case are concerned, as fully as they had existed prior to the unionization.

What happened to the bonded debt of the disorganized union graded district, of which $4,000 remained unpaid? As stated by plaintiffs, that debt had to go somewhere. The pertinent portion of section 6939, O. S. 1931, 70 Okla. St. Ann. sec. 583, is as follows:

"If any consolidated or union graded school district at the time of its dissolution * * * shall have a legally bonded or warrant indebtedness, such indebtedness shall be distributed among the various school districts composing consolidated or union graded districts in proportion to the assessed valuation of each of the districts to the assessed valuation of the consolidated or union graded school district for the past fiscal year **and such indebtedness shall attach to and become a part of** the different school districts and it shall be the duty of the county excise board of the county or counties in which such districts are located to cause to be levied annually upon the property, real, and personal, of the different districts a tax sufficient to pay interest on such indebtedness * * * and to constitute a sinking fund for the payment of the indebtedness when due. * * *"

The section then goes ahead to require that assets and property of the dissolved union graded district or consolidated district be first applied on payment of its indebtedness, and that if it has no indebtedness, then said assets shall be sold and partitioned among the different school districts. The dissolved union graded district in the instant case did not apply its assets and property to payment of its indebtedness, but the significance thereof, if any, is not urged by the parties.

By force of the above statute, when the union graded district was dissolved, leaving a bonded indebtedness, the revived Burwood school district's proportionate share of that indebtedness became its own indebtedness and the same "attached to and became a part of" the said Burwood school district, in the language of the statute. It should be borne in mind that the consolidated district had not yet been formed, and, in legal contemplation, looking at the situation as of that time, it may never have been formed. The debt, as suggested above, had to be placed somewhere. The statute itself performed that function. The fact that the assets and property of the disorganized union graded district were not sold to apply on the debt does not help solve the problem presented in the instant case. Nor does it erase the fact that the debt remained and became distributed. It appears obvious to us that the failure of the county excise board or county school superintendent to apportion the debt between the three districts does not prevent the debt from attaching, nevertheless. The statute itself does this. **The**

function of the county excise board is merely the levying of taxes among the different districts, for the purpose of raising the money with which to pay the debt. We are unable to arrive at any conclusion other than that the Burwood district's proportionate part of the debt became as much its own, and as much a bonded indebtedness of that district, as if it alone had created the debt in the first instance.

We have now arrived at the point in the affairs of the districts when the three revived common school districts were consolidated under the name of consolidated school district No. 36, whose board is the defendant. Did the consolidation relieve the now disorganized Burwood district from its portion of the debt which had been placed upon it by operation of the above statute? No. Section 6924, O. S. 1931, 70 Okla. St. Ann., section 255, reads:

"If any school district uniting to form a consolidated district shall have, at the time of its disorganization, a legally bonded indebtedness, such indebtedness shall **attach to and become a charge against** the territory comprised in such disorganized district at the time of the disorganization, and it shall be the duty of the county excise board of the county or counties in which such territory is located to cause annually to be levied upon the property, real and personal in such disorganized territory, a tax sufficient to meet the interest and provide a sinking fund for the payment of such indebtedness; provided that the assets and property of any disorganized district having an indebtedness, shall first be applied in payment of its floating indebtedness, if any, and then to its bonded indebtedness, and the residue, if any, shall belong to the consolidated district."

A consolidated school district is not liable for the bonded indebtedness of its constituent disorganized common school district. School District No. 60 of Ellis County v. Crabtree, 146 Okla. 197, 294 P. 171. And see cases cited under 70 Okla. St. Ann. sec. 255. We are not greatly concerned with the fact that a levy was made against the entire territory of the consolidated district for the fiscal year of 1937-1938, toward paying off the $4,000 remaining of the bonded indebtedness of the disorganized union graded district. The question here is not whether a levy was made or may in the future be made. The decisive point is whether the disorganized district in and of itself was still charged with its own separate share of the debt after the consolidation. The statute and cases plainly necessitate answering that question in the affirmative.

Having traced the debt down to the pres-

ent, let us now go back and consider the question of ownership of the house during the various changes in the districts involved. The Burwood district owned it in the beginning. Did it become the property of the union graded district when the Burwood, Thompson, and Royal districts became unionized? A section of the statutes later to be considered provides that with certain exceptions the property of a disorganized district becomes the property of a consolidated district upon consolidation, but there is no such statutory provision with reference to union graded school districts. See section 6940 et seq., O. S. 1931, 70 Okla. St. Ann. secs. 281 to 287 and 572, 573. Section 6940, O. S. 1931, 70 Okla. St. Ann. sec. 281, in addition to its other provisions, provides for the election of a board, "who shall have charge of all the schools in the union graded school district," but says nothing on the question of ownership. It further provides that "No schoolhouse shall ever be abolished, sold or removed except by a majority vote of the school electors living in the area included in the original school district." The section also prescribes that the principal teacher or the superintendent of the central school of the union graded school district shall have supervision of all schools in the said union graded district. The principal object of our statutes authorizing creation of union graded school districts seems always to have been to make it possible for adjacent common school districts to erect and maintain a central school for the giving of instruction to pupils above the sixth grade, to and including high school work, and providing transportation for the pupils, while at the same time maintaining school work in the lower grades throughout the territory, much in the same manner as theretofore, in the buildings which had been in use, and these latter are sometimes called wing schools. The union graded district organization thus in some respects resembles a form of confederacy. We are impressed with the absence of a statute among the union graded school provisions expressly transferring the original districts' school property to the union graded district, while an express provision to that effect is included among the statutes concerning consolidated districts. We conclude that when the Burwood district became a part of the union graded district in 1926, the latter did not become absolute owner of the house in question, which was located within the original Burwood district, and that the right of the Burwood district taxpayers to have the house remain a financial asset of that district was paramount to any right or inter-

est of the union graded school district as such.

When the union graded district was dissolved on May 17, 1937, and the Burwood district became revived as stated hereinbefore, said Burwood district assumed its proportionate part of the remaining bonded indebtedness of the union graded district, and possessed its school property ready to carry on with educational activities. And, as stated above, if the union graded district did not sell its own property and apply same on the balance yet remaining due on the bonded indebtedness, which may possibly have liquidated the entire amount, that fact does not change the particular question at issue in the instant case.

Coming now to the final step in considering the question of ownership of the house, we find that when the three revived common school districts formed consolidated school district No. 36, unlimited ownership of the house did not pass to the consolidated school district. Section 6925, O. S. 1931, 70 Okla. St. Ann. sec. 256, reads:

"The school property of the disorganized district shall, upon the organization of the consolidated district, become the property of said district, **except as hereinbefore provided,** and the district board of said district is hereby authorized to dispose of said property to the best interest of said district."

The phrase "except as hereinbefore provided" relates to the preceding section 6924, O. S. 1931, 70 Okla. St. Ann. sec. 255, which has been copied above. The latter part of that section directs that the assets and property of any disorganized district having an indebtedness shall first be applied in payment of that indebtedness. Therefore, if a common school district unites with others in forming a consolidated district, and has an indebtedness, (1) its legally bonded indebtedness remains its own, and (2) its assets and property must be applied in payment of that indebtedness. This is in harmony with prior decisions of this court. In Crawford v. Brisley, 131 Okla. 230, 268 P. 713, we held that on organizing a consolidated school district the assets of a disorganized district should be used to pay that district's floating indebtedness, if any, then to pay its bonded indebtedness, and that the residue, if any, should then go to the consolidated district. In Consolidated School District No. 97, Grady County, v. Sloan, 135 Okla. 29, 273 P. 271, we held that the school board should dispose of the property of a disorganized district which had been made a part of a consolidated district, and apply the proceeds to the disorganized district's

bonded indebtedness. To the same effect is Mitsler v. Eye, 107 Okla. 289, 231 P. 1045.

In Consolidated School District No. 97, Grady County, v. Sloan, 135 Okla. 29, 273 P. 271, we held that a resident taxpayer of a disorganized school district could compel the board of the consolidated district to dispose of the disorganized district's property and apply the proceeds on the disorganized district's bonded indebtedness. That decision is squarely in point in the present controversy. It therefore follows that the plaintiffs, being resident taxpayers of the disorganized Burwood district, could compel the consolidated district in the instant case to dispose of the house and apply the proceeds on the Burwood district's indebtedness. While the present action was not for the specific purpose of compelling the board to dispose of the house, we think that in general the principles are the same. The evidence reveals that the board was not preparing to remove the house for the purpose of sale, but for moving it to the central building, there to use it as a classroom. In that case it would no doubt become attached to the realty in that location and complications involving questions of real property would follow. And, in that case, if the consolidated school district should become dissolved, and the house in the meantime had been moved away and attached to realty elsewhere, the Burwood district would possibly lose the house and its value in the process.

The defendants also urge that the court erred in refusing to require plaintiffs to execute and file an injunction bond. A temporary injunction was not granted. The permanent injunction was the only injunction in the case. Section 718, O. S. 1931, 12 Okla. St. Ann. sec. 1392, prescribes in substance that no injunction shall operate until the party obtaining the same shall give an undertaking to secure to the party injured the damages he may sustain if it be "finally decided" that the injunction ought not to have been granted. This section does not apply when a permanent injunction is awarded. The general rule is stated in 32 C. J. 312 in this manner:

"No injunction bond is required in the case of permanent injunctions; and statutes requiring a bond have no application to final injunctions which conclusively settle the rights of the parties, leaving no question of further damages."

See, also, to the same effect 14 R. C. L. 473; High on Injunctions (4th Ed.) p. 1574; Marion Electric Light & Ice Co. v. Rochester. 149 Ky. 810, 149 S. W. 977; Lake Erie & W.

R. Co. v. Cluggish, 143 Ind. 347, 42 N. E. 743; Felton v. Wedthoff, 185 Mich. 72, 151 N. W. 727; Davison v. Hough, 165 Mo. 561, 53 S. W. 731; Comm. v. Franklin Canal Co., 21 Pa. 117; Jones v. Commonwealth, 222 Ky. 173, 300 S. W. 346.

BAYLESS, C. J., and RILEY, OSBORN, GIBSON, and HURST, JJ., concur. DAVISON, J., dissents. WELCH, V. C. J., and CORN, J., absent.