JAMES et al. v. UNION GRADED SCHOOL DIST. No. 2, MUSKOGEE COUNTY.

No. 33313. May 24, 1949.
Rehearing Denied June 14, 1949.
Second Petition for Rehearing Denied June 28, 1949.

*207 P. 2d 241.*

C. B. McCrory and Duval Pitchford, both of Omulgee, for plaintiffs in error.

Richard Martin, of Muskogee, for defendant in error.

JOHNSON, J. In 1908, Common School District No. 11 of Muskogee county, Okla., built a schoolhouse on the property involved in this cause of action.

It is not known how Common School District No. 11 acquired possession of this property. There is no deed of record to Common School District No. 11. Said common school district conducted school on this property from 1908 until February 2, 1921. Union Graded School District No. 2 was duly and regularly created February 2, 1921, which included Common School District No. 11 and two other school districts in Muskogee county, Okla.

From February 2, 1921, to 1942, a period of 21 years, Union Graded School District No. 2 operated and conducted a wing school on this property. In 1942 the wing school was closed for lack of a teacher. It was disclosed in the evidence at the trial by the school authorities of said Union Graded District No. 2 that when needed they intend to reopen this wing school for school purposes.

The defendant in error was in continuous possession of said property until 1946 when the plaintiff in error seized possession of the property.

The plaintiffs in error purchased the adjoining property in 1921.

The question involved is the title and right of possession of Union Graded School District No. 2 to the school building and approximately two acres of ground upon which the building is located. The building and grounds comprise what is commonly termed "a wing school" where children up to and including the sixth grade attend. The

parties contesting the title and possession of said district are George James and Edith James, who own the adjoining real property.

The plaintiffs in error herein were defendants in the trial court, and defendant in error was plaintiff. Hereafter, we will refer to them as they appeared in the trial court.

It is conceded by both parties that the real property involved was originally a portion of the surplus allotment of Nancy Taylor, who died prior to statehood; that she was survived by her two children, Barney Taylor and Ellen Deer, who inherited said real property, subject to the curtesy interest of Barney McBride, the surviving husband of Nancy Taylor, and that Barney McBride died in 1922. Also, that defendants purchased the adjoining property from the heirs as heretofore stated. That at the time defendants acquired the title to adjoining property. Barney McBride executed a waiver of his curtesy rights.

It is further conceded by the parties hereto that the approximately two acres of land involved in this action was that upon which a schoolhouse was built by Common School District No. 11 of Muskogee county, Okla., in 1908; that said common school district was in possession and maintained school on said property until February 2, 1921, when said school district and other school districts were consolidated into Union Graded School District No. 2, which is the plaintiff in this action.

Under this state of facts the plaintiff claimed to have acquired title by adverse possession to the realty involved herein, and after hearing the evidence and argument, the trial court made findings of fact and conclusions of law in favor of plaintiff.

It was, that is, the contention of defendants that Common School District No. 11 with its school building was from 1908 until February 2 1921, but a licensee in its occupancy of the premises, and that plaintiff, Union Graded School District No. 2 did not have the capacity February 2, 1921, or thereafter, to acquire title to real estate, except for a central school building, by adverse possession or otherwise.

The record discloses, and the defendant, George James, alleged and testified that before he bought the land adjoining the school site in 1921 there was a schoolhouse on the land, two outdoor toilets and a coal house; that the school yard was enclosed by a fence built by the school district; that school was being conducted in said building at the time he purchased the adjoining land and was so conducted until some time in the latter part of 1942; that no school was conducted in said building after 1942; that according to an unsigned contract between Union Graded School District No. 2, Muskogee county, Okla., and the Board of Trustees of the First Baptist Church of Haskell, Okla., the church was to have the use of the school building only for church services from January 1946, until terminated by thirty days' notice under a lease at $1 per month; that in the month of May, 1945, defendant placed notices signed by himself purporting to be the owner of the school premises and notifying all persons to keep off same; that during August of 1946 he fenced the premises so as to restrain all persons from entering said premises or using the same; that he had paid the taxes on the 160 acres, which included the approximately two-acre school site, but did not pay taxes on the improvements.

W. E. White testified, in substance, that he had been employed by the Haskell school system since 1920; that he has been connected with Union Graded School District No. 2, either as a teacher or superintendent, since it was established the first of the year of 1921; that the property involved was originally the property of Common School District No. 11; that said Union Graded District No. 2 had at all times had possession of said premises; that defendants never claimed any right, title or

interest in said property until 1945; that district No. 11 had conducted school on said premises until united with Union Graded School District No. 2. To the same effect was the testimony of G. G. Morgan, county superintendent of Muskogee county, Okla.

It is contended that Union Graded School District No. 2 was incapable of acquiring real property by adverse possession or otherwise, except for a central school building, and as authority they cite Consolidated School District No. 36 v. Edwards, 184 Okla. 384, 87 P. 2d 962, but this case is not in point.

In the case of Reynolds v. Tankersley et al., 167 Okla. 425, 29 P. 2d 976, this court held that where several schools, by majority vote, decide to form a union graded school district under provisions of the law, the several districts lose their individual entity and unite to become one district which is a body politic and corporate under section 6784, O. S. 1931 (Title 70, sec. 64, O. S. 1941).

Title 70, sec. 64, O. S. 1941, is as follows:

"Every school district organized in pursuance of this article shall be a body corporate, and shall possess the usual powers of a corporation for public purposes by the name and style of school district . . . . (such a member as may be designated by the county superintendent of public instruction) . . . . . . . . County (the name of the County in which the district is situated), State of Oklahoma, and in that name may sue and be sued, and be capable of contracting and being contracted with and holding such real and personal estate as it may come into possession of by will or otherwise, or as is authorized."

The general rule of ownership of property of school districts is stated under subject of Schools, 47 Am. Jur. 342, sec. 65, as follows:

"The ownership of school property is generally in the local district or school board as trustee for the public at large. Such property occupies the stat-us of public property and is not to be regarded as the private property of the school district by which it is held or wherein it is located."

The general rule is subject to the statutory limitations as to disposal of property within the boundaries of the disorganized district (70 O.S.A. §281) and the statutory right of revival of the common school districts upon dissolution of union graded school (70 O. S. A. 582). Under these statutory provisions, the holding of title to property in the union graded district which the common school districts owned at the time of unionization may be considered as being held in trust for the original school districts. Union Graded District No. 2 did not seek to quiet title as against Common School District No. 11, but sought only to quiet title as against the defendants, George and Edith James, and the court quieted title only as against said defendants. Common School District No. 11 being disorganized could not be the party to the action. The judgment did not affect in any manner the statutory rights of the old Common School District No. 11. Plaintiff had such interest as authorized it to maintain the action. The judgment inured to the benefit of plaintiff and its beneficiary, Common School District No. 11, according to its respective interest as governed by applicable statutes. Perry Public Library Ass'n et al. v. Lobsitz et al., 35 Okla. 576, 130 P. 919.

Defendants further contend that the possession of Common School District No. 11 was permissive, which if true, possession would not be adverse either as to Common School District No. 11 or Union Graded District No. 2, successor to the property of School District No. 11 which was used as a "wing school." It is undisputed that this property was used for 35 years as a public school facility, and that for 24 years the defendants knew that plaintiff had fenced in approximately two acres of their land and were using the same adverse to them for school purposes, but at no time did defendants make

inquiry of plaintiff as to what right plaintiff had upon said property, and even at the time defendants purchased the adjoining land they admit that they made no inquiry of plaintiff about the nature of plaintiff's possession.

We conclude that the possession of real property carries with it the presumption of ownership, and it is the duty of those purchasing such property from others than those in possession to ascertain the extent of their claims; and the open, actual possession of such property gives notice to the world of just such interest as the possessor actually has therein. Jones v. Sharp, 183 Okla. 22, 79 P. 2d 585.

Under Title 12, sec. 93, par. 4, O. S. 1941, the statutory period for an adverse possession to ripen into a title by prescription is fifteen years.

In Moore v. Slade, 194 Okla. 143, 147 P. 2d 1006, this court said:

"A possession to be adverse must be open, visible, continuous, and exclusive, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any claim of others, but against all titles and claimants."

In an Ohio case, Board of Education v. Nichol, 70 Ohio App. 467, 46 N. E. 2d 872, in a similar situation, the court said:

"It is inconceivable that plaintiff board would thus improve tract five relying upon an oral agreement to protect its title, as it is a matter of common knowledge that such boards do not so extensively improve real estate upon oral permission of the owner."

In the same case the court continued:

" 'In the absence of a license, which precludes the possibility of a claim of adverse possession, or the execution of an agreement in accordance with law granting the right of occupancy for a fixed period, the placing of a permanent structure on the land of another constitutes adverse and hostile possession under which title may be claimed after 21 years.' McCleery v. Alton, 8 Ohio Cir. Ct. (N.S.) 481, 19 Ohio C.D. 97."

Where in a cause of equitable cognizance the trial court had before it all the pleadings and evidence and upon hearing determined all the issues of fact and law, in such case, the Supreme Court, on appeal, will weigh the evidence, but will not reverse judgment on the facts unless it is against clear weight of the evidence. Record examined, and we conclude that the judgment is not against the clear weight of evidence.

Affirmed.

DAVISON, C.J., ARNOLD, V.C.J., and WELCH, GIBSON, LUTTRELL, and HALLEY, JJ., concur. O'NEAL, J., dissents.

———

O'NEAL, J. (dissenting). I cannot concur in the majority opinion herein, and because of the far-reaching effect thereof with reference to the title of property belonging to many common school districts in the state which have been included in union graded school districts, I feel that I should set forth the reasons for my dissent.

I think the opinion is erroneous in more than one respect. First, Union Graded School District No. 2, Muskogee county, never did and never could and never can acquire title to the two acres of land here involved or the buildings located thereon.

The record shows, and it is conceded, that Union Graded School District No. 2, Muskogee county, was created or established in 1921. It was created out of the territory theretofore comprising Common School District No. 11, Muskogee county, and two other school districts. The law then in force under which Union Graded School District No. 2 was created, was section 1, ch. 252, S. L. 1917. It has since been amended and is now 70 O.S. 1941 §281 (70 Okla. St. Ann. 281, 1948 Supp.).

Thereunder the officers of a union graded school district are authorized to establish a central school in which instruction shall be given to all pupils above the sixth grade to and including the regular high school work, and such work shall not be duplicated in other schools of the union graded school district. That left instruction in the sixth and lower grades to be given in the other schools of the union graded school district. Said Act further provides:

" . . . No schoolhouse shall be abolished, sold or removed in any Union Graded School District or in any Consolidated District formed from territory previously comprising a Union Graded School District, except by a majority vote of the school electors living in the area included in the original school district. . . ."

Under that provision it has been expressly held by this court that:

"Where common school districts were made into union graded school districts, their legal status as common school districts were merely suspended during unionization, and hence on dissolution of union graded school districts they were reinstated and resumed their common school district status." School Board of Consol. Dist. No. 36, Stephens County, v. Edwards, 184 Okla. 384, 87 P. 2d 962.

In the same case it was held:

"When a common school district unites to form a union graded school district the latter does not become absolute owner of the property and assets of the common school district, but the right of the taxpayers of the common school district to have said property remain a financial asset of that district is paramount to any right or interest of the union graded district as such."

Words could hardly be plainer. If it means anything, it means that the title to property, not only the buildings but the school site, if owned by the common school district, is paramount to any right or interest of the union graded district as such. That such

is the law is made doubly clear by what is said in the body of the opinion, namely:

" . . . The union graded district organization thus in some respects resembles a form of confederacy. We are impressed with the absence of a statute among the union graded school provisions expressly transferring the original districts' school property to the union graded district, while an express provision to that effect *is* included among the statutes concerning consolidated districts. We conclude that when the Burwood district became a part of the union graded district in 1926, the latter did not become absolute owner of the house in question, which was located within the original Burwood district, and that the right of the Burwood district taxpayers to have the house remain a financial asset of that district was paramount to any right or interest of the union graded school district as such."

Under that decision and the clear statements therein, I am unable to understand how the trial court arrived at finding or conclusion No. 4, upon which the judgment appears to be based, wherein the court said:

"4. The statutory procedure employed in said consolidation effected a significant and radical change in the legal status of said real property and thereby established a novel stable dominion over it, indicative of a claim of exclusive adverse possession thereto by the plaintiff in this cause."

I must confess that I am unable to understand what, if anything, that finding or conclusion means. In the first place, there was no consolidation as is the case in the creation of a consolidated school district. But if Union Graded School District No. 2 had been converted into a consolidated school district, still, under the Edwards case, supra, the school site, if owned by School District No. 11, and the buildings thereon, would still be the property of the original School District No. 11. To quiet title thereto in Union Graded School District No. 2 would be to permit it to sell or

dispose of said property, and School District No. 11 would possibly lose the house and the site and their value, all contrary to the rule stated in the Edwards case, supra. Under the rule there stated, Union Graded School District No. 2 could never become the owner of or acquire title to any of the property owned by School District No. 11 at the time it was taken into the union graded school district. Certainly, School District No. 11 was and still is the owner of the building on the two-acre site here involved. Assuming that it was the owner of the site also, it still owns it under the law stated in the Edwards case, supra.

The trial court was without authority of law to decree Union Graded School District No. 2 to be the owner in fee of said property against School District No. 11; certainly so where School District No. 11 was not a party.

I do not question the right of Union Graded School District No. 2 to the right of possession of the property. But this is not a suit in ejectment; it is an action to quiet title. Plaintiff alleged in its petition that it was in actual, open, notorious and exclusive possession of the property involved. If that was true then there was no occasion for this lawsuit. If that was true, there was nothing to prevent Union Graded School District No. 2 from re-opening and conducting school in said building for instruction of pupils up to the sixth grade. That is the only purpose for which it could be entitled to possession. I think the only action that plaintiff could rightfully maintain is one for possession only. But the trial court did not find that plaintiff was in possession at the time this action was commenced. It only found that:

"5. Mr. Earl White, the superintendent of Union Graded School District No. 2, who has been employed by said district at all times since same was created in 1921, testified that the plaintiff had at all times been in adverse possession of said property since February 2, 1921."

The uncontradicted evidence was that no school had been conducted in the building for more than two years before the action was commenced; that defendant James had fenced the site in with his other land and posted notices for the public to stay off. Mr. White did testify:

"Q. You have been in possession of it all of this time? A. That is right. Q. In open, notorious, adverse and exclusive possession? A. Yes. Q. What has been the nature of your possession all of these years? A. Well we have had peaceful possession — the board of education has had peaceful possession of it and been using it since 1921, according to my own personal knowledge."

But he also testified that there had been no school there and that the property had not been used for school purposes since 1942. He testified further:

"Q. How many times have you been down there during the past four years? A. Oh, I expect I am out there every week or so. Q. During the last four years? A. Yes, sir. We have the school bus—it goes by there. Q. How many of those people have been in the schoolhouse in the last four years? A. I don't know whether any of them have been in the schoolhouse or not."

The clear weight of the evidence is that Union Graded School District No. 2 was not in possession when this action was commenced.

However, defendants, George James and Edith James, filed a cross-petition setting up title and possession in them and praying that the title of defendant James be quieted as against plaintiff. That conferred jurisdiction upon the court to determine the entire title as between the parties. Newcomer v. Robison, 159 Okla. 236, 15 P. 2d 129. But it did not confer jurisdiction upon the court to decree title in the Union Graded School District No. 2 as against the original School District No. 11.

If the majority opinion correctly states the law of this state, then every union graded school district in this

state is the owner in fee of all of the property which each common school district therein owned at the time the union graded school district was created. That is in direct conflict with the statute and with the decision of this court in the Edwards case, supra.

I understand the rule to be that in actions to quiet title and in actions for possession and to quiet title, the plaintiff must rely upon the strength of his own right and title and not upon the weakness of the right or title of his adversary.

As I view the law, the most that Union Graded School District No. 2 could recover is the right of possession alone and that only as against defendants who were before the court.

The decree should at least be modified so as not to deprive School District No. 11 of its title to the schoolhouse, or its right to claim title to the school site, and so as to limit the effect and operation of the decree to the parties before the court.

For the reasons stated above, I respectfully dissent.