Charley PORTER, Plaintiff In Error,

v.

Leonard G. HERRON, Defendant in Error.

No. 36733.

Supreme Court of Oklahoma.

Feb. 7, 1956.

Rehearing Denied March 6, 1956.

Application for Leave to File Second Petition for Rehearing Denied April 10, 1956.

Arnett & Leforce, Idabel, for plaintiff in error.

Tom Finney, Idabel, for defendant in error.

PER CURIAM.

Plaintiff in error, Charley Porter, was one of more than· seventy defendants in a suit to quiet title to real property, filed in the District Court of McCurtain County by Leonard G. Herron as sole·plaintiff, now defendant in error. This appeal involves only these two parties. For convenience

they will be referred to as plaintiff and defendant, the relation they bore in the trial court.

Plaintiff by his petition alleges ownership of land situated in McCurtain County described as lots 1 and 2 in Section 10, Township 9 South, Range 27 East, containing 88.75 acres also platted as the Town of · Eastport, Oklahoma. Plaintiff relies upon a quitclaim deed from one H. R. Yeager, dated April 9, 1945, and also claims under a resale tax deed issued May 12, 1947 covering lots 1 and 2 of Section 10.

Defendant by answer generally denied the allegations of the petition, tendered any taxes due on all the land and denied that any taxes were due on 39 lots described in the answer, located in the platted town of Eastport. He claimed title by a deed from one Mary Millage, dated July 7, 1943, covering the lots enumerated. Defendant asked that the tax deed be cancelled and that his title to the lots be quieted.

By reply plaintiff denied defendant's ownership of the lots claimed and sought cancellation of the deed relied upon by defendant.

Defendant's appeal is from the judgment awarding him only four of the lots claimed.

The county records as of the time plaintiff filed his suit showed the following situation:

One H. R. Yeager, from whom the parties derive their source of title, recorded his deed on February 17, 1912. The property was described as lots 1 and 2 of section 10. Thereafter the two lots of section 10 were platted into a townsite under the name "Eastport" and the plat thereof was filed in the office of the county clerk during the month of July, 1921.

The platted area is co-extensive with the section description and is traversed by a railroad right of way. There are 276 lots north of the railroad, 84 of which are 50 x 140 feet and 192 of which are 25 x 140 feet. The plat shows streets, all named, and alleyways, and the 28 blocks contained in the plat are numbered. The streets and alleyways were never opened for use.

There were recorded, during the period from 1914 to 1926, deeds conveying 85 lots scattered over the townsite. These deeds were from Yeager to various parties. Of these lots 21 and 22, Block 15, were conveyed to George Millage, and lots 4 and 5, Block 18, to H. D. Prince, the four lots awarded defendant by the judgment. There were no deeds of record from Yeager to Mary Millage nor any recorded deeds showing transfer of title to her of the lots described in the deed from her to defendant.

Defendant relies on the failure of plaintiff to establish his claim under applicable law and the evidence, and claims title by prescription.

■ In the first instance we find that the quitclaim deed from Yeager to plaintiff, although describing the land according to section, was sufficient to convey any right, title or interest Yeager had in the platted area since the areas under the two descriptions were co-extensive and the lots and blocks readily determinable. There was no dispute as to Yeager's original ownership of the land and his ownership of the entire platted area prior to any conveyance by him of lots and blocks. It follows that he retained title to such lots, if any, which were not conveyed by him or lost by adverse possession. Plaintiff stated a cause of action in his petition to quiet title and offered proof of possession at the time suit was brought and put his record of title in evidence. Since defendant sought affirmative relief by way of quieting his own title the issues were drawn on the disputed title between plaintiff and defendant and there was no error by the trial court in overruling defendant's demurrer to the evidence produced by plaintiff in support of his petition.

The entry of judgment by the trial court quieting title in defendant to four lots and to nine lots in other parties is inconsistent with the validity of the resale tax deed. It was stipulated by the parties that the land was separately assessed for taxes both as lots of the section and as lots and blocks in the townsite. The tax deed is obviously void and plaintiff obtained no title thereunder.

Defendant advances five points as propositions argued in support of his assignments of error. Basically he relies upon error of the court in failing to grant judgment in his favor supporting his contention that he acquired title to the property north of the railroad by prescription. Determination of this issue will be decisive of the points relied upon and urged as error.

The trial court, over objection of plaintiff, admitted evidence on the part of defendant in support of his claim of adverse possession by himself and predecessors. A finding of fact was made on this issue, the court finding that defendant's evidence was insufficient to establish title by prescription and "specifically" found the issues of fact on the question of adverse possession "in favor of the plaintiff, Leonard G. Herron, and against the defendant, Charley Porter."

It became apparent, for the first time, through the evidence offered by defendant that he made claim to all the lots north of the railroad rather than only the 39 lots described in his answer. Some rulings of the court with respect to this contention gives rise to several assignments of error argued by defendant. However, we find that all the issues merge into that of whether the trial court was in error in finding the question of adverse possession against the defendant.

It is evident from an examination of the record that the defendant was unable to show a record title to those persons upon whom he depended as predecessors in his claim of adverse possession other than to the four lots decreed to him in the judgment. The 39 lots set out in defendant's answer were a part only of the blocks north of the railroad. The north area was fenced into three separate enclosures and none of the 39 lots or groups thereof were fenced separately from the adjoining lots.

Defendant having acquired his only record title to lots not awarded him in the judgment in 1943 from Mary Millage, who only had record title to two of the lots, title to which was awarded defendant, he must rely upon proof of adverse possession under a claim of right and not color of title.

■ This court has held in several cases that a possession, to be adverse, must be open, visible, continuous, and exclusive, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants. Moore v. Slade, 194 Okl. 143, 147 P.2d 1006; James v. Union Graded School District No. 2, Muskogee Co., 201 Okl. 573, 207 P.2d 241; Liles v. Smith, 206 Okl. 458, 244 P.2d 582.

The trial court made a finding that the land platted into the town of Eastport is rough, open, unimproved, largely in timber; that no effort has been made to develop it into a town, and that plaintiff had been in constructive possession since April 29, 1945 of all the townsite area except that part held to be owned by the defendants. The evidence adduced by plaintiff reasonably supports such finding.

The evidence on the part of defendant reasonably tended to show a possession of all the area north of the railroad by persons residing thereon or maintaining fences enclosing the three areas. Numerous persons, grantees of Yeager, had lived in the area and three persons, Lunis, Shelton and Millage, upon whom defendant depends to round out his adverse claim, had apparently lived on certain lots within separate fenced areas although it is not clear from the record as to which fenced area was identified with each and the situation is further confused by possession of one Wash Davis of a seven-acre area not identified as to location.

■ While defendant's evidence clearly shows that Lunis, Shelton and Millage lived in the fenced areas for some twenty years, it is not evident from the testimony and record as to the nature and extent of their possession nor clearly established that their claim to the land met the requirements of adverse possession set out in the rule quoted above. There were numerous other parties living in the area at various times and what area they claimed and for what period of time was not established.

We cannot find from the evidence that the trial court's finding on adverse possession was error as against the clear weight of the evidence in the absence of proof reasonably tending to show the exact area claimed, and adversely, by defendant's predecessors as required for the statutory period.

In James v. Union Graded School District No. 2, Muskogee Co., supra, we stated the rule long established in this jurisdiction that in a cause of equitable cognizance where the trial court had before it all the pleadings and evidence, and upon hearing determined all the issues of fact and law, this court on appeal would weigh the evidence but not reverse the judgment on the facts unless it is against the clear weight of the evidence. This rule is here applicable. We cannot find from a review of the evidence that the finding of the trial court was clearly against the weight thereof.

The trial court heard all the material testimony of defendant on the issue of adverse possession. Findings of fact and conclusions of law entered on the request of the parties were sufficient to cover all material requirements to support the judgment.

Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY, JACKSON, and HUNT, JJ., concur.

WELCH and BLACKBIRD, JJ., dissent.

The Court acknowledges the aid of The Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner CRAWFORD and approved by Commissioners REED and NEASE, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.