**Frank KOURI, Plaintiff in Error,**

v.

**Horace J. BURNETT, Defendant in Error.**

**No. 40963.**

Supreme Court of Oklahoma.

March 29, 1966.

Rehearing Denied June 14, 1966.

Garrett & Garrett, Mangum, for plaintiff in error.

Homer Windle, Mangum, Charles C. Callaway, Mangum, for defendant in error.

DAVISON, Justice.

Frank Kouri (defendant below) appeals from a judgment in favor of Horace J. Burnett (plaintiff below) in which the title to a strip of land was quieted in Burnett, but subject to a 12-foot easement in favor of Kouri. The parties will be referred to by their trial court designation. The strip of land is 50 feet wide (east and west) and about 350 feet long (north and south), and is located between property which plaintiff admittedly owns on the east side thereof, and property which defendant admittedly owns on the west side thereof. Said strip of land is located in the southwest corner of the Northwest Quarter of Section Twenty-five, Township Six North, Range Twenty-one West of the I. M., and extends lengthwise (north and south) along and next to the west line of the quarter section. Defendant's property is located immediately to the west thereof. A quarter section line road (Ollie Street, in Town of Granite, Oklahoma) runs east and west along the south boundaries of the parties' property.

Plaintiff filed his action April 11, 1962. In his petition he sought to quiet title against numerous defendants to a large tract of land in the southwest corner of the above described quarter section, including the strip of land in controversy and land to the north and east thereof. Plain-

tiff alleged that his title and ownership was based upon deeds of conveyance extending back to the original government patent and upon continuous adverse possession of him and his privies and predecessors in title for a period of more than 15 years.

In his answer and amendment thereto the defendant disclaimed any interest or right in the property, except as to the 50 foot strip of land above described; denied plaintiff or his predecessors had any title by conveyance or possession of the 50 foot strip; alleged the strip of land, for a period of more than 30 years and longer than plaintiff had owned adjacent property, had been used by defendant and members of the general public as a street; and by cross-petition asked the court to enjoin plaintiff from interfering with defendant and other members of the public in their use of the 50 foot strip as a street.

At the trial no other defendant contested plaintiff's right to quiet title, and the only issue presented to the court was that raised by the answer and cross-petition of defendant.

From our careful examination of the record it is our conclusion that certain events and circumstances were conclusively shown to have taken place or existed prior to and after plaintiff acquired title to the property east of said 50 foot strip in 1945. In 1906 one R. S. Waddell filed a plat of Waddell Addition to the Town of Granite consisting of three blocks and covering land lying adjacent to and east of the subject 50 foot strip. The plat description commenced at a point 50 feet east and 30 feet north of the southwest corner of the Northwest Quarter (supra), thence north 350 feet, thence in an easterly direction following the base of (Head Quarter) mountains. These "mountains" also extended westerly and were a barrier to northbound travel. This plat was vacated in 1914 by the owner of the entire addition, using the same description as was employed in the plat.

The defendant has occupied his property (west of the 50 foot strip) as his residence since about 1925 or 1926, and the entrance is from the east and west road or street along the south. For some time prior to 1935 or 1936 there were three houses located on the property east of the 50 foot strip, and the occupants used the strip for ingress and egress. Defendant also used the strip "to drive up that way." The record shows that at this time (1935 or 1936) defendant had fenced the east line of his property, with a gate into his property at some undescribed point thereon, and that this fence has at all times thereafter continued to exist along defendant's easy boundary line. In 1936 or 1938 the Town of Granite constructed a rock lined ditch along the road south of the properties. This prevented vehicles from being driven from this road on to and upon the 50 foot strip, but defendant did do some foot travel thereon. At about this time or shortly thereafter (the record is not clear) the three houses mentioned above were moved away.

On July 13, 1945, plaintiff acquired title to the area formerly comprising Waddell Addition. This conveyance did not include the subject 50 foot strip of land. Thereafter, and sometime between 1955 and 1958 (the exact time not being shown) the road south of the properties was improved as Highway No. 6, and the rock ditch was removed, and defendant filled in a vehicle approach to the strip of land. There is undisputed testimony that, after this was done, the defendant used some part of the strip and had oats and feed hauled to a barn on the north or rear of his property, which (because of the terrain) was the only way to his barn and such part of his property.

After trial of the cause the court, upon consideration of the above matters and other evidence, and after viewing the premises, rendered judgment quieting title in plaintiff to the 50 foot strip of land, subject to a 12 foot right of way easement in favor of defendant over the west part of the 50 foot strip, running from the highway on the south to the north or back part of defendant's property with no right to park thereon,

with the right to plaintiff to fence said right of way separately or to maintain gates at the end thereof if the agricultural area in which the easement was located was fenced.

In the trial court's decision the court made findings in which it incorporated practically all of the matters and things above stated as having been conclusively shown by the evidence, and also additional findings. The court further found that immediately after plaintiff purchased Waddell Addition (land formerly located therein) in 1945, he went into possession of that property together with the 50 foot strip to the west thereof "which was fenced in with it;" that since that date the plaintiff had been in adverse possession of the 50 foot strip and after 15 years had ripened into a good title; that there had existed an easement or right of way over the west part of the 50 foot strip which defendant had always used since about 1935, and which he had never intended to abandon; and that an easement or right of way existed of not to exceed 12 feet in width on the west part of said 50 foot strip in favor of the defendant.

Defendant presents his argument for reversal of the judgment under several propositions of error. These propositions may be classified generally under the single proposition that the judgment is contrary to the evidence and the law.

Plaintiff herein is claiming a title by prescription under 60 O.S.1961, Sec. 333, based on occupancy for a period sufficient to bar an action for recovery of property. Title 12 O.S.1961, Sec. 93, limits an action for recovery of real estate to 15 years.

■ In Choate v. Muskogee Electric Traction Co., Okl., 295 P.2d 781, it is stated:

"Adverse possession of real estate for the period of time prescribed by the statute ripens into title by prescription, and such adverse possession may be either under claim of right or color of title."

■ In James v. Union Graded School Dist. No. 2, 201 Okl. 573, 207 P.2d 241, involving title by adverse possession we applied the rule that, where in a cause of equitable cognizance the trial court had before it all the pleadings and evidence and upon hearing determined all of the issues of fact and law, in such case, the Supreme Court, on appeal will weigh the evidence, but will not reverse the judgment on the facts unless it is against the clear weight of the evidence.

■ It is also a well established rule of law that in order to establish title by adverse possession, the proof must be clear and positive on the constituent elements of actual, open, notorious, exclusive and hostile possession for the statutory period. Colson v. Hall, 206 Okl. 687, 246 P.2d 339.

In addition to those matters above set forth the trial court was presented with testimony that at the time plaintiff acquired his property on July 23, 1945, the 50 foot strip was fenced along the south end thereof and was enclosed with his other property, and that plaintiff went into possession thereof, and planted and harvested crops on the land until about 5 years before the trial (February 11, 1963) when he allowed the property to go to grass, and had pastured horses thereon. Witnesses testified that on various occasions they had seen the south line fenced. Defendant's evidence was that there was no such fence and that he had actively opposed the fencing. Admittedly, no vehicle had used the strip during the time the rock lined ditch had existed across the south end, supra, but after the removal of the ditch some part of the strip had been used on occasion to haul feed and grain to the barn of defendant on the rear of his property. Defendant testified he had driven his car thereon and there was testimony that some automobile tracks had been seen on the disputed 50 foot strip.

Consideration must be given to the rather unusual circumstances presented in this matter. The line between defendant's property and the disputed 50 foot strip is a section line and ordinarily would be the location for a section line road. However,

the barrier of the mountains to the north apparently precluded this use, and (according to some testimony) a substitute road was made at another location. Defendant's property on the west is a lot that is platted to the section line. The subject 50 foot strip was not included in either that plat or vacation of Waddell Addition, but it was recognized by the trial court as being fenced with the land formerly comprising that addition. Some testimony reflected a few members of the public had used it to walk to the mountains. There is no substantial evidence that the general public made use of it in the sense of a public way after plaintiff made claim thereto when he bought the land formerly comprising Waddell Addition. Only the defendant makes a claim of use in connection with his adjoining property.

It is obvious that the trial judge, upon consideration of the evidence and upon viewing the premises, came to the conclusion that under the circumstances of the particular case the acts of dominion of the plaintiff were such as to constitute adverse possession of the 50 foot strip. At the same time the trial court recognized defendant's use was such as to constitute an easement for ingress and egress for his property and preserved the same by the above described 12 foot easement. Plaintiff is not complaining in this court as to this portion of the judgment.

█ In Cox v. Sarkeys, Okl., 304 P.2d 979, it is stated:

"What constitutes 'possession' of land is a mixed question of law and fact; 'actual possession' consisting of the exercise of acts of dominion over it, in making the ordinary use of it and taking the ordinary profits it is capable of yielding in its present state."

█ And in McGrath v. Eichhoff, 187 Okl. 64, 100 P.2d 880, 886, this court in discussing adverse possession, said:

"The law does not attempt to list all of the acts of dominion which may constitute such possession, so that what constitutes adverse possession, like the question of what constitutes negligence, often depends upon the circumstances of the particular case, as measured by the judgment of reasonable men. It has been said that such a determination in a given case must largely depend upon 'the situation of the parties, the size and extent of the land, and the purpose for which it is adapted. * * *'"

█ The fact that defendant is claiming a right of use, or easement, in the strip is an admission that the lands belong to another person. In Frater Oklahoma Rlty. Corp. v. Allen Laughon H. Co., 206 Okl. 666, 245 P.2d 1144, we quoted with approval a definition of an easement as follows:

"'* * * An easement is a liberty, privilege, or advantage without profit, which the owner of one parcel of land may have in the lands of another; * * *.'" (Emphasis ours)

█ In the present situation we believe that the circumstance that the defendant had a private easement over the strip does not weaken the exclusive character of plaintiff's possession to the extent that plaintiff would be precluded from acquiring prescriptive title to the strip of land. In 21 C.J.S. Adverse Possession § 51, p. 568, it is stated:

"Possession may be exclusive notwithstanding the land is subject to rights which are mere easements and not things in possession."

This rule was applied in Young v. City of Lubbock, Tex.Civ.App., 130 S.W.2d 418, 420, where the plaintiff had enclosed and taken possession of a portion of an alley for the prescriptive period and there was located in the alley certain public utilities, including a line of electric power poles. It was urged that these prevented the plaintiff from having the necessary exclusive possession for establishment of a prescriptive title. The court said:

"There is no testimony as to any use made by these utility companies of the alley in question other than that their lines traversed the alley. It is not con-

tended by the appellee that these companies had any rights in the alley other than easement rights. We think the rule is that 'to render possession exclusive, it is not necessary to preclude the exercise of an easement by a private person.' 2 C.J.S. Adverse Possession, p. 568, § 51. 'Possession may be exclusive notwithstanding the land is subject to rights which are mere easements and not things in possession.' 2 C.J.S. Adverse Possession, p. 568, § 51; Barker v. Publishers' Paper Co. et al., 78 N.H. 160, 97 A. 749."

There is also some complaint by defendant that the judgment limits him to use of a prescribed lane in the exercise of his easement. Defendant's evidence as to his use was general in the respect that it did not reflect the portion of the strip that was usually or necessarily used. The evidence informed the trial judge as to the type and nature of the use, and this, together with the judge's view of the premises, obviously resulted in fixing the location of defendant's use as limited to the 12 foot lane next to his property.

■ In discussing prescriptive ways, 28 C.J.S. Easements § 77c, p. 758, states:

"If the limits of a way so acquired are not very clearly defined the owner of the dominant tenement is only entitled to a way bounded by the line of reasonable enjoyment."

This rule was applied in Van De Vanter v. Flaherty, 37 Wash. 218, 79 P. 794, 796, involving a prescriptive right of way over private property, as follows:

" * * * Complaint is also made that there was no testimony to support the finding that the roadway used was 20 feet in width. A right of way by grant which is not limited in the grant itself, or a right of way by prescription, is bounded by the line of reasonable enjoyment. Everett Water Company v. Powers (decided Feb. 21, 1905) [37 Wash. 143] 79 Pac. 617. When the case is remanded the court below can ascertain

and fix the width of the roadway in accordance with the rule above announced."

See Northwest Cities Gas Co. v. Western Fuel Co., Inc., 17 Wash.2d 482, 135 P.2d 867, 869, for identical statement.

As a part of his contention, that the judgment is contrary to the evidence and law, the defendant urges that the failure of plaintiff to pay taxes on the subject strip of land, when considered with the evidence, conclusively defeats the claim of adverse possession. This argument is predicated in large part on the validity of his contention that plaintiff had failed to clearly prove exclusive adverse possession commencing and continuing after his land purchase in 1945. As heretofore shown, this contention is without merit.

The record does show that Greer County did convey to plaintiff on May 7, 1948, property acquired by the county at tax resale described as "20 acres in the NW¼ Sec. 25, Twp. 6, Rng. 21." Plaintiff contends this included the 50 foot strip of land now in dispute and that he thereafter paid taxes thereon, and consequently paid the taxes on the strip of land. This real estate conveyance is pertinent only to the proposition of payment of taxes, for the reason that the conveyance was less than 15 years prior to the filing of the present action (April 11, 1962) to quiet title. We are doubtful that the description does include the disputed strip of land, because a later mortgage describes the 20 acres as being located north of the land acquired by plaintiff in 1945. In its findings the trial court does not mention the proposition of payment of taxes and we assume it considered the evidence as a whole sufficient to support the judgment rendered. Neither the Town nor County tax records showed the 50 foot strip as having a separate and identifiable tax status.

■ In Cox v. Sarkeys, supra, it was stated:

"The payment of taxes is not a controlling circumstance, but it is one of the means whereby a claim of ownership is asserted, and a failure to pay taxes

weakens a claim of ownership by adverse possession."

 It is our conclusion, after consideration of the entire record and the law applicable in this situation, that the judgment rendered herein is not against the clear weight of the evidence and is not contrary to the law in such cases.

The defendant further complains that the lower court erred in denying his motion for new trial based on grounds of newly discovered evidence.

The newly discovered evidence was the testimony of one Don Johnson who allegedly would testify that in 1948–1949 he was an employee of plaintiff and plowed the west portion of plaintiff's land, including the 50 foot strip, and saw tracks on the strip and plaintiff did not complain when he did not plow over that portion of the strip, that the tracks were a "good distance east of the west side" of the strip, that there was no fence on the south side, and that in 1957 the 50 foot strip was used as a turn-around when the road on the south was being improved.

In Johnson v. Woodard, Okl., 376 P.2d 602, we stated:

"In order to entitle a party to a new trial on the ground of newly discovered evidence, among other things, the evidence relied upon must not be merely cumulative or contradictory to the former evidence but it must be such as will probably change the result in the event a new trial is granted."

From our examination of the record as heretofore set forth, the alleged newly discovered evidence is largely cumulative and contradictory to the considerable testimony introduced at the trial regarding the use and enclosure of the disputed strip. It does not appear to us that such additional testimony would probably change the result if a new trial had been granted. The trial court apparently was of the same opinion when it overruled the motion for new trial.

In States Exploration Co. v. Reynolds, Okl., 344 P.2d 275, we held that the granting or refusing of a new trial on the ground of newly discovered evidence rests to a large extent in the discretion of the trial court, which means a legal discretion to be exercised in discovering the course prescribed by recognized principles of law, and will not be disturbed by this court where no abuse of such discretion is shown.

We are of the opinion that the trial court was not guilty of an abuse of discretion in denying a new trial under the present circumstances.

It is our conclusion that the judgment rendered herein is not clearly against the weight of the evidence, nor is it contrary to the applicable law.

Affirmed.