The **CITY OF MOORE, Oklahoma, a Municipal Corporation, the Moore Public Works Authority, and the Moore Development Authority, Public Trusts, Plaintiffs in Error,**

v.

The **CENTRAL OKLAHOMA MASTER CONSERVANCY DISTRICT, a corporation, the City of Norman, a Municipal Corporation, and the State of Oklahoma ex rel. Kirk T. Mosley, Commissioner, State Department of Health, Defendants in Error.**

No. 41688.

Supreme Court of Oklahoma.

May 28, 1968.

454

Smith, Smith & Cook, Wilbert G. Smith, Oklahoma City, for plaintiffs in error.

Sam F. Whitlock, Norman, for defendants in error.

LAVENDER, Justice.

This action was begun in the District Court of Cleveland County, Oklahoma, as a suit to enjoin the defendants from discharging sewage effluent into the Little River watershed. The action was brought by the Central Oklahoma Master Conservancy District and the City of Norman, a municipal corporation. The defendants included The City of Moore, Oklahoma, a municipal corporation; The Moore Public Works Authority; and The Moore Development Authority. The last two agencies were and are public trusts. It is undisputed that whatever rights involved herein which were possessed by the original Town of Moore was succeeded to and may now be properly exercised by defendant, The City of Moore, and/or by the public trusts pursuant to contractual arrangements as between said defendants. The plaintiffs and the defendants, unless referred to by name, shall be hereinafter referred to collectively by their trial court designations.

After a hearing, a temporary injunction was issued by the trial court and, upon posting of an approved bond, the same became effective shortly after this action was begun.

After the issuance of the temporary injunction, the State of Oklahoma ex rel. Kirk T. Mosley, Commissioner, State Department of Health, was permitted to intervene.

Plaintiffs complained that unless the defendants were enjoined they would discharge effluent from their sewage treatment plants into the watershed of the Little River and thus pollute the water reservoir operated by plaintiffs and from which the plaintiff City of Norman, as well as Midwest City and Del City, also municipal corporations of Oklahoma, intend to obtain water for domestic use. The plaintiffs complained that there was a reasonable expectation that the discharge of effluent would be a public nuisance detrimental to the health and well being of the users of water from the reservoir. It was also contended by plaintiffs and in particular, by the State ex rel. the Commissioner of the State Department of Health, that the defendants' permit to construct its present sewage facilities was issued upon and subject to a condition that as soon as the reservoir was completed and ready to impound water that defendants would cease discharging effluent into the watershed of the river but would instead pump such effluent out of the Little River basin and over a ridge into the South Canadian River.

The defendants' answer was to the effect that 1) defendants had obtained a vested right to discharge sewage effluent into the Little River watershed because they (or the Town of Moore) had been doing so since 1935; 2) that defendants' sewage treatment plant was a modern plant constructed according to approved methods and was being operated in a proper manner; 3) that the effluent therefrom was not, nor was it in danger of becoming, a hazard to the health of the users of plaintiffs' reservoir water; and 4) that to enjoin defendants from continuing to discharge the sewage effluent as they had done for so many years was to, in effect, deprive them of a valuable property right without due process of law.

The trial of the action resulted in finding of fact and conclusions of law of the trial court upon which it based its judgment perpetually enjoining the defendants from discharging effluent from this sewage treatment facility into the Little River watershed. The defendants' subsequently filed motion for new trial was denied by the trial court and defendants have appealed, asserting as error the following contentions, or propositions:

"Proposition 1. The court is without authority to declare a properly operated and maintained sewage disposal system a nuisance.

"Proposition 2. Before plaintiffs are entitled to injunctive relief, they must establish to a reasonable probability by clear, convincing and satisfactory evidence all the material elements necessary to obtain the injunction.

"Proposition 3. The law of the case must be applied to the facts of the case and the judgment rendered must be in accordance with the law and the facts.

"Proposition 4. The defendants, having a vested right [to discharge sewage effluent into the drainage basin of the Little River Reservoir], cannot be deprived of that vested right without due process of law and without just compensation."

In reviewing this record, it seems fair to say that the evidence does establish (as defendants contended) that the sewage treatment plant in question was properly constructed and is being efficiently and properly operated and that the plant is removing as much deleterious and harmful material as is possible to remove from the sewage, considering man's knowledge and his present capacity for designing, constructing, and operating such a facility The matter is not, however, subject to such a simple solution as merely decreeing that therefore the trial court was not correct and that the defendants should be permitted to continue to discharge sewage effluent into the Little River basin.

The evidence revealed that on September 10, 1959, the plaintiff, Central Oklahoma Master Conservancy District, was formed for the purpose of constructing a dam across Little River to impound the waters of that river and tributaries to supply a source of water for the cities of Norman, Midwest City, and Del City. That sometime in 1961 the plaintiff, the State Department of Health, informed the officials of the Town of Moore that the construction of the dam would require Moore's sewage plant to be located outside the drainage area which would serve the reservoir. Conferences were thereafter held between representatives of the State Department of Health and the Town of Moore regardng the problem. As one of the results of these conferences, the Town of Moore was advised that it could construct its new plant within the Little River drainage area, but that as soon as the reservoir began collecting water the effluent from the sewage plant would have to be pumped out of the Little River basin and into the South Canadian River.

On September 4, 1962, the defendants submitted to the State Department of Health a written application for permission to construct its present sewage plant. Plans and specifications showing location and type of proposed pedestals for later installation of effluent pumps were submitted and approved. The defendants' engineer submitted along with the application and plans a letter, which appears in the record, and in which he stated: "The construction schedule of the Little River dam contemplates closing the gates in November, 1964. The Health Department and the Conservation District have placed us on notice that they will require us to pump the sewage plant effluent over the ridge to the west into the South Canadian River after the reservoir starts collecting water in 1965. The pumping operation will not be needed until November, 1964. We do not propose to build the facilities until they are needed."

On October 1, 1962, pursuant to the above application, the Commissioner of Health issued a permit which in part reads as follows:

"The Moore Public Works Authority having complied with the requirements of law is hereby granted permission to construct a sewage treatment plant, main sewers, laterals, appurtenances, to serve the town of Moore, Oklahoma, to be constructed in accordance with the plans and specifications approved by this Department on September 17, 1962; subject to the following provisions:

" * * *

"6) That the effluent from this plant will be pumped out of the Little River Drainage Basin when the gates of the Norman Reservoir are closed to impound the flow of Little River, until such time as the State Health Department gives written approval to the termination of the pumping operation; in accordance with the policy stated in provision No. 7.

"7) Based on the knowledge and information now available with respect to present sewage treatment methods and their deficiencies, it is, in our opinion, necessary to require that the wastes from this plant be pumped out of the Little River Drainage Basin. This does not preclude that future development in sewage treatment methods may be shown to be effective in removing the objectionable constituents of the waste, permitting it then to be discharged into the natural drainage of the Little River Reservoir."

The Moore Public Works Authority accepted this permit, without any objection or appeal therefrom, and, pursuant thereto, constructed the sewage treatment plant involved herein.

Thereafter the defendants operated the sewage treatment plant and until the issuance of the temporary injunction herein continued to discharge the effluent therefrom into the Little River watershed. The defendants took no action '(prior to the issuance of the temporary injunction, here-

in) to install the necessary pumps or pipe-lines to pump the effluent out of the Little River basin. After the issuance of the temporary injunction, defendants com-menced the necessary preparations to pump the effluent out and by the time of the trial of the cause the facilities were nearly com-plete.

We do not deem it necessary to a deci-sion of this matter to decide whether, un-der the evidence herein, there was a suf-ficient showing that if the defendants had continued to discharge sewage effluent in-to the Little River watershed that the same would have then, or in the immediate fu-ture, become a nuisance detrimental to the public welfare of the users of water from the Little River reservoir. We deem it sufficient to say that there was evidence upon both sides of this issue. We prefer to place our decision of this matter upon the basis that the defendants' Proposition four is without merit for the reasons hereafter shown and that the State Department of Health was, under this record, entitled to an injunction to require compliance with the terms and conditions of its permit.

Defendants' Proposition four is to the effect that because the defendants' prede-cessor, The Town of Moore, had dis-charged sewage effluent into the same general area of the Little River watershed as that in which defendants more recently have also discharged effluent that the de-fendants thus acquired a vested and valu-able property right to continue to do so and that it would violate defendants' constitu-tionally protected rights to allow the judg-ment of the trial court, prohibiting it from continuing to exercise such right, to stand.

Section 4 of a 1917 act, which was re-pealed in 1963 but which appeared as Sec-tion 6076 O.S. 1931 and, later, as 63 O.S. 1961, § 614, provided:

"No person, company, corporation, in-stitution or municipality shall let a con-tract or contracts for any construction work of any nature for a sanitary sewer-age system and sewerage disposal and treatment plant, or for any extensions, either in whole or in part, or place or per-mit to be placed or discharged or permit to flow into any of the waters of the State or elsewhere any sewerage except as hereinafter provided, subsequent to the passage of this act, without a permit from the State Board of Health. * * *"
and further provided that, for the purposes of the act, the term "sewerage" is defined as "any substance that contains any dis-charge from the bodies of human beings or animals, or chemical or other wastes from domestic, manufacturing or other forms of industry." It further provided for the making of an application to the State Board of Health for such a permit, accompanied by maps and plans and specifi-cations showing, among other things, the planned sewer outfall, and such other data as might be required by the State Board of Health, and for the issuance of such a per-mit by the State Board of Health, and also authorized the fixing of terms under which such a permit would be granted and pro-vided for an appeal to the district court from any order authorized therein, within thirty days from the making of the order, by any person, company, corporation, insti-tution or municipality considering the re-quirements of any such order to be illegal, or unjust, or unreasonable. Section 1 of the same act (which appeared as Section 6073, O.S.1931, and later as 63 O.S.1961, § 611) defined the term "waters of the State," as used in the act, as including "all streams and springs and all bodies of surface and impounded ground water, whether natural or artificial, within the boundaries of the State."

In November of 1935, in apparent compli-ance with the above statute, the defendants' predecessor, the Town of Moore, obtained from the State Board of Health such a per-mit concerning a sewage treatment plant to serve the town's sanitary sewage system. It constructed such a plant, and until the sewage treatment plant directly involved in this action was put into operation, the efflu-ent therefrom was discharged into what later became the drainage basin of the Little River Reservoir. Since the defend-

ants allege, and the plaintiffs and intervenor tacitly admit, that the plant was constructed and operated in accordance with the plans and specifications therefor as submitted to, and approved by, the State Board of Health and in accordance with the requirements of that board, it may be assumed that either the permit, or the application therefor or the data accompanying the application, provided for the discharge of the sewage effluent into that area.

We are of the view that a permit issued under § 6076 O.S. 1931 not only authorized the holder of the permit to construct, or to extend, a sanitary sewer system and/or sewage treatment plant, but also authorized the holder of the permit to discharge the effluent from the sewage treatment plant, if any, involved, into certain waters of the state (indicated in the documents accompanying the application for the permit, if not specified or indicated in the permit), and that, without such a permit, the discharge of any sewerage or sewage effluent into any of the waters of the state would constitute a violation of the prohibitory portions of that statute.

Consequently, the conduct of the Town of Moore, as well as the conduct of the defendants herein up until the closure of the gates of the Little River dam and the commencement of the impoundment of water in the Little River Reservoir on September 8, 1964, (which was subsequent to the commencement of this action by the plaintiffs), allegedly and admittedly pursuant to those permits, was by the express permission of the State of Oklahoma, and without such permits, would have constituted violations of the prohibitory portions of that statute or of the 1963 statute that replaced it.

This means that one of the most essential elements, if not the most essential element, of a prescriptive title or right— that the acts relied on as establishing such title or right be hostile or adverse to all others—was completely missing. Also, as we understand the general principles of law and equity, one cannot acquire a prescrip-

tive right to violate express provisions of the law.

All but one of the cases cited by the defendants in support of their claim of a prescriptive right to discharge sewage effluent into the Little River Reservoir involved the question of the acquisition, by prescription, of the right to discharge "surface water" onto the land of another and, of course, did not involve such a statute. Even the one case that did involve the question of the acquisition, by prescription, of the right to discharge sewage effluent into a stream of water (City of Cleveland v. Standard Bag and Paper Company, 72 Ohio St. 324, 74 N.E. 206) did not involve such a statute, or such a permit, or the acquisition of such a right as against the state.

Without considering the question of whether, in the absence of such a statute, a municipality could acquire, by prescription, such a prescriptive right as against the State of Oklahoma, we hold that, unless and until withdrawn by the state, the permission granted by a permit issued pursuant to the 1917 statute that later appeared as 63 O.S. 1961, § 614 is sufficient to prevent the holder of such a permit from acquiring, by prescription, a right to discharge any sewerage, as defined in that statute, into the waters of the state indicated in such permit or in the application for such permit or in the documents accompanying the application.

Neither the trial court's conclusion of law that the defendants had acquired no vested right, by prescription, to discharge any effluent from their sewage treatment plant into the drainage basin of the Little River Reservoir, nor that part of the trial court's judgment that is based thereon, is clearly against the weight of the evidence or contrary to law or established principles of equity. The defendants' fourth proposition must be denied.

The permit issued to The Moore Public Works Authority on October 1, 1962, pursuant to 63 O.S. 1961, § 614, supra, not only authorized the permittee to construct a sewage treatment plant in accordance with the

plans and specifications therefor as submitted to, approved by, the Commissioner of Health of the State of Oklahoma, but also gave the permittee permission to discharge the effluent therefrom into the drainage basin of the Little River Reservoir until the date of closure of the gates of the Little River dam and the commencement of the impoundment of water in the Little River Reservoir (which, under the undisputed evidence, occurred on September 8, 1964), and after that date, to discharge the effluent from the plant into the watershed of the South Canadian River *but not into the drainage basin of the Little River Reservoir.*

The Oklahoma Public Health Code (63 O.S. Supp. 1967, §§ 1–101 through 1–1710), adopted in 1963, repealed 63 O.S. 1961, § 614, and other statutes, but one section of that act (63 O.S. Supp. 1967, § 1–908) contained provisions substantially the same as those contained in 63 O.S. 1961, § 614, including the prohibitory provision thereof; and another section of that act (63 O.S. Supp. 1967, § 1–1701) provided for injunctive relief, in the district and superior courts, to prevent a violation of, or to compel compliance with, any of the provisions of the act.

Although the State of Oklahoma did not specifically plead that the conduct of the defendants in discharging the effluent from their sewage treatment plant into the drainage basin of the Little River Reservoir from and after the closure of the gates of the dam and the commencement of the impoundment of water in that reservoir, on September 8, 1964, constituted a violation of the prohibitory provisions of the above-mentioned section of the 1963 Oklahoma Public Health Code, it did plead, and prove, facts showing that, after September 8, 1964, the defendants had no permit to discharge the effluent from their sewage treatment plant into that drainage basin and that such effluent would reach the water in that reservoir—a clear violation of that statute—and prayed for a permanent injunction against the defendants' discharg-

ing the effluent into that drainage basin. The judgment granting the permanent injunction in question herein was warranted by those facts and those statutes, and whether or not the trial court based that ultimate conclusion upon other facts or other principles of law, or both, correct or erroneous, becomes immaterial.

 In a case of equitable cognizance such as here, this court is not bound by the reasoning of the trial court or by its findings, but will examine the whole record, consider and weigh the evidence, and if the law and the facts warrant, will affirm the judgment or order complained of if the trial court reached the correct ultimate conclusion. Ellis v. Williams (1956), Okl., 297 P.2d 916; English v. Rainwater (1965), Okl., 403 P.2d 449. We notice also the principle that equity, when once invoked in a proper proceeding, will administer complete relief on all issues properly raised by the evidence, regardless of whether they were specifically raised by the pleadings. Lackey v. Quigley (1937), 181 Okl. 492, 74 P.2d 927.

 From an examination of the whole record we are of the opinion and hold that the trial court's judgment permanently enjoining the discharge of any sewage or sewage effluent from the defendants' sewage treatment plant into the watershed or drainage basin of the Little River Reservoir is not clearly against the weight of the evidence or contrary to law or established principles of equity. We are of the further opinion that the trial court did not abuse its discretion in ordering that the costs of the action in the trial court be taxed against the defendants.

Those portions of the trial court's judgment are therefore affirmed.

 In its journal entry of the judgment granting the permanent injunction against the defendants, the trial court also ordered, adjudged and decreed that the defendants pay all costs of the action, "including the reasonable sum required to be paid by plaintiffs to procure the execution of the Temporary Injunction Bond hereto-

fore filed by a surety company in the sum of $347.50." In their third proposition, the defendants argue that no such item was prayed for in the plaintiffs' pleadings, that there was no evidence pertaining to any such item introduced in the trial court, and that the journal entry of judgment which included such item was not submitted to their attorneys for approval but was entered without any notice to the defendants and without giving them any opportunity to be heard on the matter. Without denying any part of this argument, the plaintiffs contend that, because 12 O.S. 1961, §§ 1388 and 1392 require the giving of a bond before an injunction is effective, the first annual premium of $437.50 for the $70,000.00 temporary injunction bond required by the trial court in issuing the temporary injunction in this case, was a necessary expense of the litigation and, therefore, properly included in the costs taxed against the defendants as provided in 12 O.S. 1961, § 930. The defendants do not attack the action of the trial court in taxing all of the costs against them, but only attack the action of the trial court in ordering and adjudging, in the manner that it did, that the bond premium be included in the costs to be paid by the defendants.

In this respect, the situation is comparable to the situation in State National Bank of Shawnee v. Woodward (1929), 136 Okl. 26, 275 P. 1045, although the item in question in that case (an attorney's fee for the successful defendant in a replevin action) had not been ordered to be included in the costs. The matter of an attorney's fee for the defendant had not been mentioned prior to, or at the time of, the rendition of judgment for the defendant. Some time later, at an ex parte hearing held without any notice to the plaintiff but at which evidence was presented, the trial court granted the defendant's application to include in the judgment the sum of $50.00 as a reasonable fee for the defendant's attorney. Without passing upon the right of the defendant to be allowed a fee for his attorney in the case, this court said that each interested party had as much right to be heard on the ques-

tion of the attorney fee as upon any other phase of the case, and modified the judgment for the defendant by striking therefrom the provision for the $50.00 attorney's fee.

Likewise, whether or not judgment may properly be rendered against a losing defendant in an injunction action, either as a part of the costs of the action or otherwise, for expense incurred by the plaintiff for premium on a temporary injunction bond provided by the plaintiff to make a temporary injunction effective, such a defendant has as much right to be heard on the question of the allowance of such item and the amount, if any, to be allowed therefore, as on any other phase of the case. Where the matter is not presented, in any manner, to the trial court prior to, or at the time, final judgment is rendered against the defendant and the judgment as announced by the trial court makes no reference to such an item, but the journal entry of the judgment, as signed by the trial court without having been seen by counsel for the defendant, provides for judgment against the defendant for such expense, either as a part of the costs of the action or otherwise, the purported judgment therefor is unauthorized.

That portion of the judgment of the trial court, as evidenced by the journal entry of judgment in the present case, which requires the defendants to pay, as a part of the costs of the action, the sum of $437.50 as the amount required to be paid by the plaintiffs to procure the execution of the temporary injunction bond that they had, theretofore, filed in the case, is reversed.

Contending that the defendants' appeal herein is frivolous, the plaintiffs pray, in their brief herein, that this court assess against the defendants the additional expenses incurred by the plaintiffs for attorneys' fees in this court, for the printing of briefs required by the rules of this court, and (on the theory that, under Weaver v. Bishop, 174 Okl. 492, 52 P.2d 853, the sureties on a temporary injunction bond remain subject to contingent liability in event of

reversal, on appeal, of the judgment granting a permanent injunction) for any additional premiums the plaintiffs will have to pay on their temporary injunction bond, all upon plaintiffs filing a verified statement of payment of such expenses, prior to issuance of mandate, according to the rules of this court.

Among the statutes relating to appeals to this court is 12 O.S. 1961, § 978, which provides that:

"When a judgment or final order is reversed, the plaintiff in error shall recover his costs, *including the costs of the transcript of the proceedings, or case-made,* filed with the petition in error; and, when reversed in part and affirmed in part, costs shall be equally divided between the parties." (Emphasis supplied.)

And Rule 32 of this court provides that:

"The Clerk shall not tax as costs any *expense of case-made, transcript or record,* unless the person claiming the same, prior to the issuance of a mandate in the cause, shall file with the Clerk a verified statement of such expense showing that he paid the same." (Emphasis supplied.)

In the early (1909) case of Combs et al. v. Miller, 25 Okl. 1, 105 P. 322, the syllabus reads as follows:

"The expense incurred by a successful litigant in the Supreme Court for printing briefs required by the rules is not, in the absence of statute, or a rule upon the subject, a proper item of costs to be taxed against the losing party;"

and the body of the opinion reads as follows:

"The question here presented arises on a motion filed for the purpose of securing an order taxing, as costs in favor of [the successful] plaintiffs in error and against the defendant in error, the expense incurred in the preparation of briefs. Counsel for movant proceeds upon the theory that, inasmuch as the rules of court require briefs to be printed, the expense incurred is a proper and

legitimate item of costs. Our statute on this subject is contained in [the statute that now appears as 12 O.S. 1961, § 978, supra], which provides that: * * * The foregoing statute is the only rule there is upon the subject. The expense of printing briefs has never at any time within this jurisdiction been held to be a proper item of costs. Our statute nowhere enumerates it as such, and no rule of this court has ever made this expense a proper charge against an unsuccessful litigant. If it ever should be made, and held to be a proper charge, in our judgment it should arise upon a statute or rule (conceding that this court would have the power to make such rule), and not upon a declaration in the first instance, as we are here requested to make.

"Under these circumstances, the motion is denied."

 Since Rule 32 of this court, supra, is no broader in its scope than Section 978, supra, but expressly mentions the same items, and only the items, expressly mentioned in the statute and apparently is designed only to provide the procedure for a party to recover the items expressly mentioned in the statute, Combs v. Miller, supra, is directly in point on the request of the plaintiffs in the present case for the taxing, as costs, of expenses incurred by them for the printing of briefs required by the rules of this court; and, since, like brief-printing expense, neither attorney fees nor bond premiums is mentioned in Section 978, supra, the same principle would apply to the plaintiffs' request that those items be taxed as costs in the appeal.

Plaintiffs' motion is denied.

Since the judgment of the trial court is reversed in part and affirmed in part, the costs in this court are to be divided equally between the plaintiff in error and the defendant in error. 12 O.S. 1961, § 978; Municipal Paving Co. v. Herring (1915), 50 Okl. 470, 150 P. 1067; Stinson et al. v. Sherman et al. (1965), Okl., 405 P.2d 172. It is so ordered.

All the Justices concur.