Dear Senator Laughlin
¶ 0 This office has received your request for an Opinion addressing, in effect, the following question:
 Does Title 2 O.S. Supp. 1997, § 9-210.1(I)(3) prohibit the establishment of a Concentrated Animal Feeding Operation within three (3) miles of a water well that serves as a public water supply if the Concentrated Animal Feeding Operation would be located within the drainage basin for the public water supply?
 APPLICABILITY OF THREE MILE SETBACK TO GROUNDWATER WELLS
¶ 1 In 1997, the Legislature enacted the Oklahoma Concentrated Animal Feeding Operations Act ("the Act") to require more stringent construction and operational standards for large confined animal feeding operations. 2 O.S. Supp. 1997, §§ 9-201[2-9-201]
through 9-215. The stated purpose of the Act is to "provide for environmentally responsible construction and expansion of animal feeding operations and to protect the safety, welfare and quality of life of persons who live in the vicinity of an animal feeding operation." 2 O.S. Supp. 1997, § 9-210[2-9-210](B). To this end, the Legislature established various setback requirements applicable to the location and operation of concentrated animal feeding operations ("CAFOs") in Oklahoma. 2 O.S. Supp. 1997, § 9-210.1[2-9-210.1].
¶ 2 CAFOs have the potential to pollute the waters of the State due to the storage of large quantities of animal waste in lagoons and land application of the wastes on croplands. Environmental Encyclopedia 16-17 (William R. Cunningham et al. eds., 1994). Animal waste that is stored in lagoons has the potential to leach into groundwater or run off into surface waters. Id. The setback requirement at issue in this question restricts the location of CAFOs in relation to public water supplies. Specifically, Section 9-210.1(I)(3) provides that:
 Except as otherwise provided by Section 18 of this act, no concentrated animal feeding operation shall be established after the effective date of this act which is:
. . . .
 3. Within three (3) miles of the high water mark of a public water supply if the concentrated animal feeding operation is located within the drainage basin for the public water supply.
2 O.S. Supp. 1997, § 9-210.1[2-9-210.1](I) (emphasis added).
¶ 3 In determining whether Section 9-210.1(I)(3) prohibits the location of a CAFO within three miles of a groundwater well that supplies water to the public, the Legislature's intent in enacting this provision must be ascertained through an examination of the statute's language as a whole. Hill v. Boardof Education, 944 P.2d 930, 931 (Okla. 1997). On its face, Section 9-210.1(I)(3) prohibits the establishment of a CAFO within three miles of a public water supply when the operation will be located within the public water supply's drainage basin. A reading of this section in conjunction with the stated purpose of the Act in Section 9-201(B) indicates that the Legislature intended to create a setback requirement for CAFOs in order to prevent pollution of public water supplies. Whether this setback applies to groundwater wells depends on what the Legislature meant by the terms "public water supply," "drainage basin" and "high water mark."
¶ 4 Because the term "public water supply" is not defined by the Act, the rules of statutory construction must be applied to determine its meaning. Under Oklahoma law, "[w]henever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears." 25O.S. 1991, § 2[25-2]. The only statutory definition of the term "public water supply" is contained in Article VI of the Oklahoma Environmental Quality Code. Article VI defines the term as "water supplied to the public for domestic or drinking purposes." 27AO.S. Supp. 1997, § 2-6-101[27A-2-6-101](9). However, Section 2-6-101 makes it clear that the terms in that section are only defined for the purposes of Article VI.
¶ 5 Despite this limitation, the definition of "public water supply" in Section 2-6-101 does not conflict with the term's common definition and usage. The term "public" as it relates to a water supply is defined by Webster's as "accessible to or shared by all members of the community." Webster's Third New International Dictionary 1836 (1993). The term "water supply" is defined as the "source, means, or process of supplying water (as for a community)." Id. at 2585. Accordingly, the term generally encompasses all sources of water supplied to a community, including groundwater and surface waters, as well as the supply system itself.
¶ 6 The common definition is in harmony with the usage of the term in the Oklahoma Statutes and in case law. Title 82 at Section 1084.1 establishes that the policy of this State is "to conserve and utilize the waters of the state and to protect, maintain and improve the quality thereof for public water supplies." 82 O.S. Supp. 1997, § 1084.1[82-1084.1].
 "Waters of the state" means all streams, lakes, ponds, marshes, watercourses, waterways, wells, springs, irrigation systems, drainage systems, storm sewers and all other bodies or accumulations of water, surface and underground, natural or artificial, public or private, which are contained within, flow through or border upon this state or any portion thereof, and shall include under all circumstances the waters of the United States which are contained within the boundaries of, flow through or border upon this state or any portion thereof. Process wastewaters shall not be considered as waters of the state.
2 O.S. Supp. 1997, § 9-202[2-9-202](23).
¶ 7 Implicit in this policy statement is the recognition that all "waters of the state," including groundwater and water wells, are capable of being used as a public water supply. In addition, the Oklahoma Supreme Court has recognized that reservoirs, streams and groundwater, including wells and springs, are all used as public water supplies in Oklahoma. Bowles v. City ofEnid, 245 P.2d 730, 732 (Okla. 1952). Accordingly, the term "public water supply" in Section 9-210.1(I)(3) must be interpreted to include all "waters of the state" that are used to supply domestic or drinking water to the public, including groundwater, surface water sources and water wells.
¶ 8 If Section 9-210.1(I)(3) had only required that no CAFOs be located within three miles of a public water supply, there would be no need for further inquiry and no CAFO could be located within three miles of a groundwater well supplying water to the public. However, the Legislature limited the application of Section 9-210.1(I)(3) by requiring that the CAFO be located within the "drainage basin" of the public water supply in order for the three mile setback to apply. Further, the distance between the CAFO and the public water supply is required to be measured by reference to the public water supply's "high water mark." Neither the term "drainage basin" nor the term "high water mark" are defined by the Act.
¶ 9 Article VI of the Environmental Quality Code defines the term "drainage basin" as "all of the water collection area adjacent to the highest water line of a reservoir which may be considered by the Department to be necessary to protect adequately the waters of the reservoir. The area may extend upstream on any watercourse to any point within six hundred (600) feet of the highest water line of the reservoir." 27A O.S. Supp.1997, § 2-6-101[27A-2-6-101](3). Although statutory definitions are generally applicable to terms wherever they are used, the definitions in Article VI are expressly limited to the purposes of that Article. Specifically, the term "drainage basin" is defined in Section 2-6-101 for the limited purpose of protecting the quality of water in reservoirs. This conclusion is evident because the definition itself refers to the water collection area adequate to protect the quality of water in reservoirs and the term is only used in Article VI in a section entitled "Reservoir Protection."27A O.S. Supp. 1997, § 2-6-601[27A-2-6-601].
¶ 10 The term "drainage basin" has a broader meaning in Section 9-210.1(I)(3) because it refers to the water collection area of public water supplies. As demonstrated previously, a public water supply may be a stream, a reservoir, a lake, a well, or groundwater. If the Legislature had only intended to protect reservoirs from pollution caused by CAFOs in Section 9-210.1(I)(3), it would have used the term "reservoir" as it did in Section 2-6-601 and not the term "public water supply." By referring to the drainage basin of a public water supply, the Legislature expressed a broader intent to protect public water supplies from pollution associated with CAFOs. Accordingly, the definition of "drainage basin" in Section 2-6-101 does not apply to that term as it is used in Section 9-210.1(I)(3).
¶ 11 Although groundwater wells may serve as public water supplies, they do not possess what is commonly referred to as a "drainage basin." The term "drainage" is commonly defined as an "area or district drained (as by a river)" and the term "basin" is defined as "the entire tract of country drained by a river and its tributaries." Webster's Third New International Dictionary 685, 182 (1993). In water law, the term "drainage basin" is defined as "an area of the land surface that gathers water resulting from precipitation and contributes it to a stream, a stream system, another body of water or to a central point. The entire drainage basin therefore possesses a common outlet for its surface runoff." 6 Water and Water Rights 890 (Robert E. Beck ed., 1991 ed. 1994 rep. vol.). Drainage basin has also been defined as "[a] part of the surface of the earth that is occupied by a drainage system, which consists of a surface stream or a body of impounded surface water together with all tributary surface streams and bodies of impounded surface water." Robert W. Durrenberger, Dictionary of the Environmental Sciences 70 (1973).
¶ 12 Thus, the term "drainage basin" is commonly defined as the areas of land from which surface waters run off into surface waterbodies such as streams, lakes and reservoirs. This general definition encompasses all uses of the term in the Oklahoma Statutes and in case law. The Environmental Quality Code uses the term to describe the water collection area of reservoirs. Title 82 of the Oklahoma Statutes also uses the term to describe the water collection area of rivers. See 82 O.S. 1991, § 526.1[82-526.1]
(referring to the drainage basin of the Canadian River); 82 O.S.1991, §§ 1401[82-1401], 1421 (referring to the drainage basin of the Arkansas River). In addition, the term "drainage basin" is used in numerous cases with reference to surface waterbodies, including rivers, lakes and reservoirs. See, e.g., Oklahoma v.New Mexico, 501 U.S. 221, 111 S.Ct. 2281, 115 L.Ed.2d 207 (1991) (referring to the "drainage basin" of the Canadian River); W.H.Avitts v. Amoco Production Company, 840 F.Supp. 1116, 1122
(S.D.Tex. 1994); (referring to the "drainage basin" of lake to protect water quality); City of Moore v. Central Oklahoma MasterConservancy District, 441 P.2d 452, 459 (Okla. 1968) (referring to "drainage basin" of reservoirs). However, the water collection area for wells and groundwater is normally referred to as a "groundwater recharge area" and not a "drainage basin." See,e.g., Village of Pleasant City v. Division of Reclamation,617 N.E.2d 1103, 1105 (Ohio 1993); Town of Norfolk v. E.P.A,761 F.Supp. 867, 877, 891 (D.Mass. 1991).
¶ 13 Because the term drainage basin commonly refers to areas of land from which surface runoff drains to bodies of surface water, the most reasonable interpretation of Section 9-210.1(I)(3) is that the Legislature intended to protect surface waters, such as rivers, streams, reservoirs, and lakes, from surface runoff polluted by CAFOs. Even though water wells and groundwater can be used as public water supplies, the statute requires that a CAFO be located within the drainage basin of a public water supply in order for the setback to be applicable. Water wells and groundwaters are not commonly considered to possess drainage basins. Thus, the threshold requirement that the CAFO be located in the drainage basin of the public water supply can never be met and the setback requirement does not apply to water wells and groundwaters serving as public water supplies.
¶ 14 This interpretation of Section 9-210.1(I)(3) is also supported by the Legislature's use of the term "high water mark." A "high-water mark" is defined as "the line of the shore of the sea or of a lake or river to which the waters usu[ually] reach at high water." Webster's Third New International Dictionary 1069 (1993). Historically, the term has most often been associated with property boundaries and the rights of those on or near coastal and non-tidal navigable waters like rivers and lakes.See, e.g., California State Lands Commission v. U.S.,457 U.S. 273, 277, 102 S.Ct. 2432, 2435, 73 L.Ed.2d 1; 101 Ranch v.U.S., 905 F.2d 180, 184 (8th Cir. 1990) (ordinary high water mark is boundary between private lands and lakebed); Oklahoma v.Texas, 260 U.S. 606, 43 S. Ct. 221, 67 L.Ed. 428 (1923) (south boundary of Red River is at the ordinary high water mark). For rivers, the high water mark is normally defined as "`the line to which high water ordinarily reaches.' Thus, what courts have been interested in is evidence, such as a change in terrestrial vegetation, indicating the relatively permanent elevation of the water." U.S.V. Harrell, 926 F.2d 1036, 1042-1043 (11th Cir. 1991) (citations omitted).
¶ 15 In contradistinction, water wells and groundwaters are not typically referred to as having a high water mark. Instead, the distance between the surface and the groundwater table is usually referred to as either "depth to groundwater" or "groundwater elevation." See, e.g., North Slope Technical Limited v. U.S.,
14 Cl. Ct. 242, 245 (1988). In fact, Section 9-205.4 of the Act itself uses the term "maximum groundwater elevation" when establishing a minimum separation between retention structures and groundwater. 2 O.S. Supp. 1997, § 9-205.4[2-9-205.4](C). If the Legislature had intended for the Department of Agriculture to be able to measure the distance between a CAFO and a water well or the groundwater, it would have chosen to use the term groundwater elevation as it did in Section 9-205.4(C) or it would have allowed the measurement to be from the well as it did in Section 210.1(H). The Legislature, however, chose to use a term which is not applicable to water wells or groundwater as a reference point for measurement.
¶ 16 Although Section 9-210.1(I)(3) is somewhat ambiguous, the fact that the Legislature used two terms in the section that commonly refer only to surface waterbodies strongly indicates an intent to limit its application to those waters. It can be said with conviction that water wells and groundwaters are commonly considered to possess neither drainage basins nor high water marks. Thus, Section 9-210.1(I)(3) has no application to a groundwater well because it does not have a drainage basin and, therefore, a CAFO will never be located within its drainage basin as required by that section. In addition, a groundwater well does not have what is commonly referred to as a high water mark from which the setback can be measured. Applying the common definitions of these terms to Section 9-210.1(I)(3), the setback requirement is applicable only to surface waters which are used as public water supplies, such as rivers, streams, lakes, and reservoirs.
¶ 17 This interpretation of Section 9-210.1(I)(3) does not leave groundwater wells entirely without protection from contamination. It is important to note that several protections specific to groundwaters and water wells exist throughout the Act. See 2 O.S. Supp. 1997, §§ 9-205.4[2-9-205.4](C), (G); 9-210.1(H). In addition, the Department of Agriculture has the authority to protect groundwater sources, as well as public and private drinking water wells, through rulemaking and the license approval process.[1] However, it is outside the scope of an Opinion of the Attorney General to determine whether these mechanisms are sufficient to protect the quality of groundwater which is used as a public water supply.
¶ 18 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Title 2 O.S. Supp. 1997, § 9-210.1(I)(3) does not prohibit establishment of a Concentrated Animal Feeding Operation within three miles of a water well accessing a public water supply because the Legislature intended the section to be limited in its application to surface waters which serve as public water supplies. However, the Concentrated Animal Feeding Operations Act does establish several protections specific to groundwater and water wells, and also grants the Department of Agriculture the authority to protect groundwater through rulemaking and the license approval process.
 W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
 KELLY HUNTER BURCH ASSISTANT ATTORNEY GENERAL
[1] See 2 O.S. Supp. 1997, §§ 9-203[2-9-203], 9-204.1, 9-205, 9-212. Section 9-205.3 specifically requires that all CAFOs utilize Best Management Practices promulgated by the Board of Agriculture which must assure that "[a]nimal waste handling, treatment, management and removal shall . . . not result in the contamination of public or private drinking water supplies [and] conform with Oklahoma Water Quality Standards." 2 O.S. Supp.1997, § 9-205.3[2-9-205.3](B)(4).