2007 OK CIV APP 41

CITY OF TULSA, Plaintiff,

v.

RAINTREE ESTATES I, INC., d/b/a Silver Ridge Townhomes, a/k/a Raintree Estates I Condominiums Homeowners Association, Defendant/Appellant, David A. Birchall and Linda Birchall, husband and wife, Dick A. Blakely and Debrah Ann Blakely, husband and wife, and Judith M. McAfee, Trustee of the Judith M. Thoelke Living Trust, Defendants/Appellees,

and

Raintree Estates Recreation Association, Inc., Raintree Estates I, Inc., d/b/a Silver Ridge Townhomes, Neal Albert Evans, Trustee of the Neal Albert Evans Living Trust, W. Claire Bolding, Trustee of the W. Claire Bolding Trust, George Rick and Nancy Rick, husband and wife, The Carolyn H. Handel Trust, Morton Gould, Trustee of the Morton Gould Revocable Trust, Nanette Gaylord fna Nanette Gaylord Reather, David J. Axworthy, Barney L. Weaver and Betty J. Weaver, Trustees of the Barney L. and Betty J. Weaver Living Trust, Daniel A. Zieman, Samuel A. Grubb, Mary J. Meyer, Rebecca J. Gilman, Yun Yer Cheung, Franziska Lizotte, Trustee of the Revocable Intervivos Trust of Farnziska Lizotte, Kay Roby Romero, Trustee of the Kay Roby Romero Trust, Howard G. McGowan, III, James David Blackburn, Joni D. Orii and Jack Richardson, husband and wife, The Margaret Dee Copeland Revocable Trust, Stephen P. Meyer, Paul Keith Shields, Dale E. Atheron, Johanna C. Barrett, Kathryn L. Helbert, Thomas M. Shomaker, Diane Woodward–Frost, Trustee of the Diane Woodward–Frost Revocable Living Trust, Scott H. Clinton and Tamaura A. Clinton, husband and wife, Revocable Trust, Michael Cour, Curtis Parker and Julie M. Parker, husband and wife, Richard Atkins Holsted and Virginia Neville Holsted, husband and wife, Ryan Corley, Jane A. Boyd, Richard Lowry and Bobbie Lowry, husband and wife, Kimberly Ann Weaver,

Delores Jean Smith, Trustee of the Delores Jean Smith Living Trust, Belinda L. Hardin, Steve Azar and Clarissa A. Azar, husband and wife, Christopher Allen Wick and Mary L. Wick, husband and wife, Donald W. England and Sheila A. England, husband and wife, L.J. Aloisio, Joe P. Robertson, Board of County Commissioners and Denise Semler, Tulsa County Treasurer, Defendants.

No. 102,802.

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 23, 2007.

Certiorari Denied May 7, 2007.

Lawrence D. Taylor, and Brian E. Dittrich, Dittrich Law Firm, P.L.L.C., Tulsa, OK, Attorneys for Appellant.

Dick A. Blakeley, Tulsa, OK, Attorney for Defendant/Appellee, Dick A. Blakeley, Debrah Ann Blakeley, and Judith M. McAfee, Trustee of the Judith M. Thoelke Living Trust.

Richard H. Foster, Tulsa, OK, Attorney for Defendant/Appellee, David Birchall and Linda Birchall.

LARRY JOPLIN, Presiding Judge:

¶1 Appellant Raintree Estates I, Inc., d/b/a Silver Ridge Townhomes, a/k/a Raintree Estates I Condominiums Homeowners Association (The Association) seeks review of the trial court's order directing the distribution of proceeds of a Commissioners Report to individual condominium unit owners in a condemnation action filed by Plaintiff City of Tulsa (The City). Appellant also appeals a subsequent order of the trial court permanently enjoining The Association from assessing the individual owners for repairs to the property's common areas in an amount equal to the distribution. In this appeal, The Association complains the trial court erred as a matter of both fact and law in granting relief to five (5) unit owners, Appellee's David A. Birchall, Linda Birchall, Dick A. Blakely, Debrah Ann Blakely and Judith McAfee (The Unit Owners).

¶2 The City initiated condemnation proceedings as part of a road-widening project along Yale Avenue. Portions of Raintree Estates I (Raintree), a unit ownership development community located at 75th Street and Yale Avenue, were included in the affected area. Pursuant to a Commissioners Report, the sum of $383,000 was paid to The Association as just compensation for damage to Raintree's common elements. The report separately awarded $66,250 to the 46 individual owners for unit damage attributed to dust, dirt, noise and inconvenience. City and defendants requested a jury trial, and the condemnation action remained pending in the trial court.

¶3 Appellees objected to the Commissioners' Report and filed a cross-claim challenging The Association's entitlement to the proceeds under The Unit Ownership Act, 60 O.S. § 501 et seq.[1] and Raintree's declaration and bylaws. The trial court determined The Association lacked the requisite ownership interest to receive the funds and directed the payment of the Commissioners' award to the individual condominium unit owners, less attorney fees.

¶4 The Association subsequently assessed the individual unit owners an amount equal to the net amount awarded for damage to the common elements. Appellees objected. The trial court issued temporary and permanent injunctions, invalidating the assessment as contrary to The Association's bylaws requiring the approval of 90% of the individual unit owners for property improvements or additions. The Association appeals.[2]

---

1. The Unit Ownership Estate Act is a mechanism for owners or co-owners of single units of a multiple unit building to submit their property to the provisions of the Act for the creation of a "unit ownership estate," defined as the ownership of the single unit together with an undivided interest in the defined common elements. A declaration of intent to come under the Act's provisions must be recorded in the office of the county clerk of the county in which the property is located. 60 O.S. § 502–503.

2. The trial court's issuance of the permanent injunction is a matter related to, but not arising out of, the underlying condemnation proceeding. The Oklahoma Supreme Court has affirmatively sanctioned the notion of multiple procedural tracks in proceedings falling outside the Pleading Code's customary perimeters. Such actions include condemnation proceedings for highways and railroads, probate proceedings and the "Surface Damages Act". *Holleyman v. Holleyman*, 2003 OK 48, ¶6, 78 P.3d 921, 930, fn. 7, Opala, J., concurring. (Citations omitted.)

### The Appeal of The Interlocutory Order of January 6, 2005

■ ¶ 5 Appellant first challenges the January 6, 2005 order directing the payment of proceeds from the Commissioners Report to the individual unit owners rather than to The Association as Raintree's governing board of managers. Appellees contend this aspect of the appeal is improperly before us based upon The Association's failure either to: 1) ask the trial court to certify the order for immediate appeal pursuant to 12 O.S. § 952 (b)(3),[3] or 2) file a timely interlocutory appeal by right pursuant to 12 O.S. § 993 (A)(5).[4] The Association claims that the issues addressed in the order directing payment were subsumed into the later-issued permanent injunction and are hence ripe for appellate review.[5]

¶ 6 In this respect, we find no authority, and the Appellant cites none, permitting a party to delay timely review of an appealable interlocutory decision until a time determined more advantageous to its interest. While appealable under § 993(A)(5) and eligible for certification as such under § 952(b)(3), The Association failed to commence an appeal within thirty (30) days of the issuance of January 6, 2005 order directing payment as required under 12 O.S. § 993 (A)(5).[6] As such, the order is beyond appellate cognizance at this time.[7]

3.  Jurisdiction of the Oklahoma Supreme Court is available to reverse, modify or vacate certain interlocutory orders issued by the district court pursuant to 12 O.S. § 952 (b), including:

    . . . .

    3. Any other order, which affects a substantial part of the merits of the controversy *when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation;* provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal. If the Supreme Court assumes jurisdiction of the appeal, it shall indicate in its order whether the action in the trial court shall be stayed or shall continue. The failure of a party to appeal from an order that is appealable under . . . . subdivision . . . 3 of subsection (b) of this section shall not preclude him from asserting error in the order after the judgment or final order is rendered. (Emphasis supplied.)

    Under § 952(b), the January 6, 2005 order directing payment of funds was eligible for certification as immediately appealable if the Appellant had sought, and successfully obtained, an appropriate order. However, as The Association did not seek § 952 certification, the order must now be viewed as an interlocutory, non-appealable order until the court's entry of a final judgment.

4.  During the course of a lawsuit, jurisdiction of the Supreme Court is available to review an interlocutory order issued by the district courts which *"(d)irects the payment of money pendente lite* except where granted at an ex parte hearing, refuses to direct the payment of money pendente lite, or vacates or refuses to vacate an order directing the payment of money pendente lite;" . . . 12 O.S. § 993 (A)(5). (Emphasis supplied.)

    The January 6, 2005 order is within the enumerated class of interlocutory orders to which a party is entitled to seek immediate mid-litigation review under § 993(A)(5). This is so because the trial court ordered the condemnor to pay money to the individual unit owners over The Association's objection.

5.  In support of its position that the earlier order is now an integral part of the permanent injunction issued nine months later, Raintree relies on the trial court's having taken judicial notice of the proceeding leading to its issuance of the order directing the payment of funds and having made reference to such order when issuing both the temporary and permanent injunctions.

6.  12 O.S. § 993 requires "the party aggrieved thereby may appeal the order to the Supreme Court without awaiting the final determination in said cause, by filing the petition in error and the record on appeal with the Supreme Court within thirty (30) days after the order prepared in conformance with Section 696.3 of this title, is filed with the court clerk. If the appellant did not prepare the order, and Section of *696.2* of this title required a copy of the order to be mailed to the appellant, and the court records do not reflect the mailing of a copy of the order to the appellant within three (3) days, exclusive of weekends and holidays, after the filing of the order, the petition in error may be filed within thirty (30) days after the earliest date on which the court records show that a copy of the order was mailed to the appellant. The Supreme Court may extend the time for filing the record upon good cause shown."

7.  In the case of *State v. One Thousand Two Hundred Sixty–Seven Dollars,* 2006 OK 15, 131 P.3d 116, the Oklahoma Supreme Court has sanctioned the right of an aggrieved party to seek appellate review of allegations of error preserved during the course of the lower court proceedings but which *pre-date the entry of an appealable decision. Id.* at ¶ 17, 131 P.3d at 123 (footnote omitted). In allowing an aggrieved plaintiff in a forfeiture proceeding to raise his objection to an

### The Permanent Injunction is Dissolved as Improperly Issued

¶7 Appellate review of a permanent injunction is a matter of equitable concern. *Jackson v. Williams*, 1985 OK 103, ¶9, 714 P.2d 1017, 1020. The decision to grant or deny injunctive relief is generally within the sound discretion of the trial court and a judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion or the decision is clearly against the weight of the evidence. *Johnson v. Ward*, 1975 OK 129, ¶42, 541 P.2d 182, 188; *City of Moore v. Central Oklahoma Master Conservancy Dist.*, 1968 OK 81, ¶26, 441 P.2d 452, 459. In reviewing the matter, it is incumbent upon the appellate court to consider, examine and weigh all the evidence. *Id.* at ¶26, 441 P.2d at 459.

¶8 Two propositions of error are presented. First, The Association urges us to find the trial court's permanent injunction is procedurally deficient as based upon a temporary injunction granted without bond as required by 12 O.S. § 1392.[8] By its own admission, Appellant recognizes § 1392's applicability is limited to the trial court's entry of a temporary injunction. The Oklahoma Supreme Court has determined § 1392 inapplicable to permanent injunctions based upon the trial court's conduct of a full hearing prior to entry. *School Bd. of Consol. Dist. No. 36 v. Edwards*, 1939 OK 126, ¶22, 87 P.2d 962, 968.

¶9 By its own inaction, The Association's argument comes too late. Appellant failed either to raise its demand for bond at the time the temporary injunction was issued by the trial court or to file an application to require bond as required by 12 O.S. Section 1391.[9] Accordingly, "though there had been error in the making of the temporary order, it was not such error as would justify this court in vacating an order granting a permanent injunction after a trial upon the merits." *City of Alva v. Mason*, 1931 OK 364, ¶5, 300 P. 784, 786. A party's failure to make objections known at the time of the issuance of the temporary injunction does not rise to the level of reversible error. *Id.* at ¶5, 150 Okla. 25, 300 P. 784, 786. Based upon Appellant's failure to preserve the error now alleged, our scope of review is limited to the question of whether the trial court acted properly in entering the permanent injunction. *Id.* at ¶5, 300 P. at 786.

¶10 The Association's second proposition of error challenges the validity of the permanent injunction as: (1) contrary to Article XIX of the declaration which obligates The Association to promptly repair or restore damage to Raintree's common elements and assess the individual unit owners as needed for any deficiency, (2) entered in violation of Article XII(1)(b) of the bylaws which excludes expenses for repair and maintenance from the class of expenditures requiring approval from the individual unit owner, and (3) against the clear weight of the evidence, particularly based upon the undisputed testimony of the only witness offered at trial that the assessment was issued for the limited purpose of repairing condemnation-related damage to the common elements. The Unit Owners urge us to affirm, arguing that Article XII of Raintree's bylaws prohibit The

---

earlier-issued rejection of a motion to consolidate, the court held that 12 O.S. § 952 (a) embodies the common-law concept of reviewability stating that "(a)ll prejudicial error that stand preserved by the record through an intermediate order or proceeding that precedes any appealable decision is inchoately reviewable together with all other errors asserted to be present in the appealable disposition before the court." *Id.* at fn. 25, citing *Conterez v. O'Donnell*, 2002 OK 67, 58 P.3d 759.

8. 12 O.S. § 1392 provides: "Unless otherwise provided by special statute, no injunction shall operate until the party obtaining the same shall give an undertaking, with sufficient surety, to be approved by the clerk of the court granting such injunction, in an amount to be fixed by the court or judge allowing the same, to secure the party injured the damages he may sustain, including reasonable attorney's fees, if it be finally decided the injunction out not to have been granted."

9. 12 O.S. § 1391 provides: "A party enjoined may, at any time before judgment, upon reasonable notice to the party who has obtained the injunction, move the court for additional security; and if it appears that the surety in the undertaking has removed from the state, or is insufficient, the court may vacate the injunction, unless, in a reasonable time, sufficient security is given."

Association from incurring a capital expenditure for additions or improvements absent the prior approval of 90% of the individual unit owners.

¶ 11 Resolution of this issues requires an analysis of pertinent provisions of the Unit Ownership Act,[10] as well as the duties imposed under Raintree's declaration and by-laws.

¶ 12 As permitted under § 503 of the Act, Article XIX of the Declaration imposes an additional burden of common expense upon the individual unit owners for expenses incurred when protecting and maintaining the property:

1. Except as hereinafter provided[,] any damage to or destruction of any building and/or common elements shall be promptly repaired and restored by the Association acting by and through its Board of Administrators, using the proceeds of insurance, if any, for that purpose and the unit owners shall be liable for assessment as hereinafter provided for any deficiency . . .

4. Any deficiency assessments provided for in this Article or by Section 527 of the Act, shall be a common expense and made pro-rata according to each owners percentage interest in the general common elements and shall be due and payable within thirty (30) days after written notice thereof. The deficiency assessments, provided for herein shall be a debt of each unit owner . . .

10. Under § 503 of the Unit Ownership Act, unless otherwise provided, "general common elements" means and includes:
   (1) The land, whether leased or in fee simple, on which the building stands and such other land and improvements thereon as may be specifically included . . .
   (3) The basements, yards, gardens, parking areas and storage spaces; . . .
   (7) Such community and commercial facilities as may be provided for in the declaration; and
   (8) All other elements of the property necessary or convenient to its existence, maintenance and safety, or normally in common use.
   "Common expenses" means and includes:
   (1) Expenses of administration, maintenance, repair or replacement of the common elements; . . .

¶ 13 As set forth in The Act, Raintree's bylaws provide an administrative structure necessary in a community environment. The bylaws set forth The Association's powers and duties in maintaining, protecting and defending the property. In turn, the bylaws limit The Association's power under Article XII for expenditures which will become an obligation of the individual unit owners as follows:

1. *General Common Elements*

(a). No additions to the general common elements may be made by the Board of Administrators unless such additions have been authorized at an annual meeting of all of the unit owners or at a special meeting of all the unit owners called for that express purpose in the manner and time provided in these By-Laws. Ninety-percent (90%) of the unit owners . . . may agree that an addition to the general common elements is necessary or desirable . . . and assessments for the cost of the same levied. . . .

(b) Any improvement, other than ordinary maintenance and repairs, made to the existing common elements requiring capital expenditures must be authorized and made in the same manner as hereinabove set forth in the preceding paragraph for additions to the common elements.

¶ 14 Where possible, interpretation and deference is yielded under the bylaws to The Act and the Declaration.[11]

   (3) Expenses declared common by provisions of the Act, or by the declaration or the bylaws(.) . . .

11. Article XVII–Conflict with Declaration or Unit Ownership Estate Act provides as follows:
   1. These By–Laws have been compiled and adopted in order to comply fully with the requirements of the Unit Ownership Estate Act of Oklahoma, . . . and to implement and supplement such Act and Declaration of Unit Ownership Estate for Raintree Estates I. If any of these By–Laws conflict with the provisions of said Act or said Declaration, it is hereby agreed and accepted that the provisions of the Act or Declaration will control. Such interpretation will be given these By–Laws as will avoid any conflict with such Act or Declaration.

¶ 15 The Oklahoma Supreme Court has not addressed the issue of whether an alteration in the common elements required because of damage is a property repair *versus* an addition or improvement to the property. Accordingly, we turn to decisions from other states when faced with a similar question.

¶ 16 In *Ralph v. Envoy Point Condominium Association, Inc.*, 455 So.2d 454 (Fla. App. 2nd Cir. 1984), the Florida Court of Appeals affirmed a lower court decision sanctioning a homeowners association's authority to construct and extend a vertical seawall absent unit owner approval required for improvements or alterations to the common elements. The homeowner association defended its action as necessary maintenance and repair required to protect the condominium's common elements from storm damage and erosion. In construing together the language of the Florida statute, the condominium's declaration and bylaws as a whole, the appellate court determined that language requiring a vote of the unit owners in cases of property improvement and alteration could not be "intended to relieve an objecting unit owner of the pro rata assessment for the costs of an alteration or improvement when it is reasonably necessary for the maintenance, repair or replacement of a common element." *Id.* at 455, citing *Tiffany Plaza v. Spencer,* 416 So.2d 823, 826(Fla.App. 2nd Cir. 1982). The court went further in stating, "(s)imply because necessary work for maintenance may also constitute alterations or improvements does not nullify a condominium board's authority and duty to maintain the condominium common elements." *Ralph* 455 So.2d at 455.

¶ 17 Such are the facts before us today. Language in Article XII of Raintree bylaws cannot be construed to permit aggrieved owners to avoid assessments necessary to repair and protect the property's common elements. This is so especially in light of Article XIX which *specifically directs* The Association, as the governing board, to repair damage to the property's common elements and restore it to good order.

 ¶ 18 In further determining whether the intended purpose of the assessment is to repair property, we look to the testimony of Steve Myer, The Association's President, to discern whether the projects contemplated are property additions or improvements requiring a vote of the individual owners or rather property repair and restoration falling outside of the voting process. Myer testified that a special assessment was needed to pay for reconstruction of the driveway entrance, as well as to repair the common elements in the easements, replace lost trees, control erosion, replace the entry gate, replace the front entrance wall and to provide security and sound mitigation. And while the restoration would not call for the property to be restored to the same specifications of the element repaired (including additional sound barriers need to replace the natural barrier destroyed by The City and a new entry way configuration) Myer testified that each project was directly related to the condemnation proceeding and addressed by the assessing Commissioners. No evidence was offered to contradict Myer's testimony that the proceeds would be used for any purpose other than to address property damage attributable to The City's road-widening project.[12] As uncontroverted, Myer's testimony regarding the assessment's purpose must be accepted as true.

¶ 19 Based upon a finding that the assessment is required to repair condemnation-related damage and protect the property, we find the trial court erred in entering the permanent injunction. The trial court's permanent injunction of October 28, 2005 is vacated.

VACATED AND REMANDED

ADAMS, J., and MITCHELL, V.C.J., concur.

---

12. While the trial court's order focused its attention, in part, on a $1.2 million improvement plan contemplated by The Association, with such emphasis re-iterated by Appellee in its briefs, the propriety of this long-range plan is not at issue. At issue is the validity of trial court's permanent injunction invalidating The Association's January 11, 2005 assessment.